GUARDIAN INDUSTRIES CORPORATION v DEPARTMENT OF
TREASURY

CARGILL, INCORPORATED v DEPARTMENT OF TREASURY

Docket Nos. 119601, 120048. Submitted April 9, 1992, at Lansing.
Decided March 1, 1993, at 9:25 A.M.

Guardian Industries Corporation brought an action in the Court
of Claims against the Department of Treasury, alleging that
the defendant erred in determining Guardian's single business
tax for tax years 1982-85 by including in its total tax base
attributable to Michigan the sales it solicited in various other
states with activities that included calling on customers and
taking orders. The court, Michael G. Harrison, J., granted
summary disposition for the plaintiff, ruling that the plaintiff's
solicitation of business in other states established a nexus
between the plaintiff and those states sufficient to avoid the
Michigan single business tax. The defendant appealed. (Docket
No. 119601.)

Cargill, Incorporated, Cargill Leasing Corporation, North Star
Steel Company, and Magnimet. Corporation brought an action
in the Court of Claims against the Department of Treasury,
challenging two of its rulings. Cargill, Incorporated, which
owns the outstanding stock of the other plaintiffs, alleged that
the defendant erred in rejecting Cargill's request to file an
amended consolidated single business tax return with Cargill
Leasing Corporation for the tax years 1982-83. North Star
alleged that the defendant erred in finding that North Star's
solicitation of business in other states did not render it taxable
in those states and, therefore, that it was liable for single
business tax in Michigan for such activity. North Star's activi-
ties in the other states was limited to the solicitation of sales of
tangible personal property. The court, James T. Kallman, J.,
ruled that the Commissioner of Revenue had discretion to deny
the request to file an amended consolidated single business tax
return for the tax years 1982-83, and affirmed the denial of the
request. The court did allow consolidation for the tax years
1984-85, and also held that North Star's solicitation of business
in the other states did not render it taxable in those states, but
rather in Michigan. The plaintiffs appealed. The defendant

cross appealed from the court's ruling that certain tax allocation payments between Cargill, Incorporated, and Cargill Leasing Corporation were intercorporate transactions of a substantial nature that would allow the filing of consolidated returns for the tax years 1984-85. (Docket No. 120048.) The appeals were consolidated.

The Court of Appeals *held:*

1. Federal law, PL 86-272; 15 USC 381 does not prevent a state from levying taxes listed under § 42 of the Single Business Tax Act that are not imposed on or measured by net income, and therefore does not provide the minimum nexus standard appropriate for determining whether foreign states' taxation of the plaintiffs would violate the federal Due Process or Interstate Commerce Clauses. The defendant's argument that PL 86-272 determines whether target states can tax the plaintiffs for soliciting business must be rejected.

2. The plaintiffs' solicitation activities constituted minimum contacts with the foreign states precluding them from successfully maintaining a due process challenge to taxation of those activities by the foreign states.

3. A standard higher than the minimum connection nexus standard necessary to withstand a due process challenge must be met to withstand a Commerce Clause challenge. A tax will withstand a Commerce Clause challenge where it is applied to an activity that has a substantial nexus to the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to services provided by the taxing state. Summary disposition was improperly granted for Guardian because a genuine issue of fact exists regarding the extent of its solicitation activities within each of the foreign states. A foreign state that taxed Guardian's solicitation activities would be in violation of the Commerce Clause if Guardian's employees were never present in that state. The record is unclear in this regard. The solicitation of sales, standing alone, is insufficient to establish the substantial nexus required to withstand a Commerce Clause challenge. The grant of summary disposition to Guardian must be reversed and the case remanded.

4. The court applied an inappropriate nexus standard in determining that the solicitation of sales in the foreign states by the plaintiffs in Docket No. 120048 was insufficient in itself to meet the nexus requirements for a state's imposition of a net income tax on a foreign taxpayer under PL 86-272. The appropriate inquiry is whether the taxation of the plaintiffs' activities withstands constitutional Due Process Clause and Com-

merce Clause challenges. The plaintiffs' solicitation activities constituted such minimum contacts with the foreign states that they cannot successfully maintain a Due Process Clause challenge to taxation by those states. However, with regard to a Commerce Clause challenge, the plaintiffs failed to meet their burden of proving that they could be taxed in the foreign states. Therefore, the court properly granted summary disposition for the defendant in Docket No. 120048.

5. The Single Business Tax Act, MCL 208.1 *et seq.*; MSA 7.558(1) *et seq.*, gives the Commissioner of Revenue discretion to allow consolidation of tax returns. The commissioner's decision to disallow consolidation retroactively must be upheld unless there is no rational basis for it. In Docket No. 120048, the commissioner had a rational basis to prevent the retroactive consolidation of the plaintiffs' corporate tax returns. The Court of Claims did not err in holding that the commissioner has the inherent discretionary authority to impose a prospective-only limitation regarding consolidation of returns filed under the Single Business Tax Act.

6. The Commissioner of Revenue may allow affiliated corporations to file a consolidated return if their intercorporate transactions are of a substantial nature. Cargill, Incorporated, and Cargill Leasing Corporation failed to meet their burden of proving that Cargill, Incorporated's, rental payments to Cargill Leasing Corporation were of a substantial nature. The court erred in allowing consolidation of the tax returns for 1984-85.

Docket No. 119601, reversed and remanded. Docket No. 120048, affirmed in part and reversed in part.

1. TAXATION — SINGLE BUSINESS TAX ACT — SALES TO PURCHASERS IN FOREIGN STATES.

Sales of tangible personal property by Michigan sellers to purchasers in foreign states are considered to have been made in Michigan for purposes of the single business tax if they may not be taxed in the purchaser's state; Michigan may not tax such sales if the state to which the property is shipped taxes the transaction or that state has jurisdiction to impose any of the taxes listed in § 42 of the Single Business Tax Act (MCL 208.42; MSA 7.558[42]).

2. TAXATION — SINGLE BUSINESS TAX ACT — SOLICITATION OF BUSINESS IN FOREIGN STATES — CONSTITUTIONAL LAW — DUE PROCESS — INTERSTATE COMMERCE.

Federal Public Law 86-272; 15 USC 381 does not prevent a state from levying taxes listed under § 42 of the Michigan Single Business Tax Act that are not imposed on or measured by net

income; PL 86-272 does not provide the minimum nexus standard for determining whether a Michigan taxpayer's solicitation of business in foreign states creates a sufficient nexus with the foreign states to permit the sales to be taxed without violating the Due Process or Commerce Clauses (MCL 208.42; MSA 7.558[42]).

3. TAXATION — CONSTITUTIONAL LAW — DUE PROCESS — INTERSTATE COMMERCE.

A state may not impose taxes on the solicitation of business in the state if the taxes violate either the Due Process or Commerce Clauses of the United States Constitution; to satisfy due process, a state tax may be levied only where there is some definite link, some minimum connection between the state and the person, property, or transaction taxed; the Due Process Clause also requires that income attributed to a state for tax purposes must be rationally related to values connected with the taxing state (US Const, Am XIV; art I, § 8, cl 3).

4. TAXATION — CONSTITUTIONAL LAW — INTERSTATE COMMERCE.

A tax does not violate the Commerce Clause of the United States Constitution where it is applied to an activity that has a substantial nexus to the taxing state, it is fairly apportioned, it does not discriminate against interstate commerce, and it is fairly related to services provided by the taxing state; a taxpayer must have some physical presence in the taxing state to establish a substantial nexus to it; the solicitation of sales in a state, in and of itself, does not provide a substantial nexus sufficient to withstand a Commerce Clause challenge to taxation (US Const, art I, § 8, cl 3).

5. TAXATION — SINGLE BUSINESS TAX ACT — CONSOLIDATION OF TAX RETURNS.

The Single Business Tax Act gives the Commissioner of Revenue discretion to allow the consolidation of tax returns by an affiliated group of corporations if their intercorporate transactions are of a substantial nature; the determination whether transactions are substantial may not focus on control, ownership, or financing arrangements, or any combination of those factors; the commissioner has the discretionary authority to impose a prospective-only limitation regarding the consolidation of returns filed under the act (MCL 208.77; MSA 7.558[77]).

*Honigman, Miller, Schwartz & Cohn* (by *Benjamin O. Schwendener, Jr.,* and *Alan M. Valade*), for Guardian Industries Corporation.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Russell E. Prins* and *Terry P. Gomoll,* Assistant Attorneys General, for the Department of Treasury.

*Howard & Howard* (by *Patrick R. Van Tiflin* and *Todd Chamberlain*), for Cargill, Incorporated, Cargill Leasing Corporation, North Star Steel Company, and Magnimet Corporation.

Amicus Curiae (Docket No. 119601):

*Howard & Howard* (by *Patrick R. Van Tiflin*), for Cargill, Incorporated, Cargill Leasing Corporation, North Star Steel Company, and Magnimet Corporation.

Before: REILLY, P.J., and HOLBROOK, JR., and MARILYN KELLY, JJ.

MARILYN KELLY, J. These cases have been consolidated for appeal and involve a challenge to the availability of tax refunds for plaintiffs under Michigan's Single Business Tax Act (SBTA). MCL 208.1 *et seq.;* MSA 7.558(1) *et seq.* In case No. 119601, the state Department of Treasury, Revenue Division, (Treasury) appeals as of right from an order of the Court of Claims granting summary disposition to plaintiff Guardian Industries (Guardian) under MCR 2.116(C)(10). It claims error in the ruling that Guardian's solicitation of business in "target states" established a nexus between Guardian and the states sufficient to avoid the Michigan single business tax. It asserts, also, that procedural errors occurred below which mandate reversal. We reverse and remand.

In case No. 120048, plaintiffs Cargill et al. appeal as of right from an order of the Court of Claims. Treasury cross appeals. Cargill, Incorpo-

rated, (Cargill) argues that the court erred by ruling that the Commissioner of Revenue had discretion to deny its request to file an amended consolidated single business tax return. Plaintiff North Star claims error in the court's finding that North Star's solicitation of business in "target states" did not render it taxable in those states, but rather in Michigan. Treasury argues on cross appeal that the court erred in ruling that certain tax allocation payments between Cargill and Cargill Leasing Corporation were intercorporate transactions of a "substantial" nature. We affirm in part and reverse in part.

THE FACTS IN CASE NO. 119601

Guardian's principal place of business is in Michigan. It solicits sales in various target states with activities which include calling on customers and taking orders. In its lawsuit, Guardian claimed that, because it was subject to taxation for sales in the target states, Treasury erred in including its sales there as Michigan sales. The alleged error increased the percentage of Guardian's total tax base attributable to Michigan and raised its Michigan taxes for the tax years 1982-1985.

In its answer to Guardian's second amended complaint, Treasury alleged that some of Guardian's activities exceeded the mere solicitation of sales. It assumed as true that Guardian's remaining activities consisted of solicitation only of sales. Based on that, Guardian filed a motion for summary disposition. The Court of Claims granted the motion, ruling that mere solicitation established a nexus sufficient to permit target states to levy a business privilege type tax on Guardian.

THE FACTS IN CASE NO. 120048

Cargill owns the outstanding stock of Cargill

Leasing Corporation, North Star Steel Company and Magnimet Corporation. A portion of the intercorporate business between Cargill Leasing and Cargill derives from the leasing of tangible personal property. However, the primary source of Cargill Leasing's intercorporate income consists of tax benefit payments from Cargill. The Commissioner of Revenue rejected Cargill's request to file a retroactive consolidated tax return with Cargill Leasing for the tax years 1982 and 1983. The Court of Claims affirmed the ruling but allowed consolidation for the tax years 1984-1985.

Plaintiff North Star sought to exclude from Michigan sales approximately $120 million in sales which it alleged were taxable in other states. The parties stipulated that North Star's activities in the target states did not exceed the solicitation of sales of tangible personal property.

## DESCRIPTION OF THE MICHIGAN SINGLE BUSINESS TAX ACT

A principal question in both cases is whether a taxpayer's solicitation of business in foreign states, alone, creates a sufficient nexus with the states that they may tax the sales. Treasury alleges that it does not. It argues that, if foreign states were to tax plaintiffs based merely on their solicitation of business, they would violate PL 86-272 and the federal constitution.

Michigan's single business tax is a consumption type value-added tax which imposes a tax consequence on the value added to a product at each step of its production and distribution. See *Caterpillar, Inc v Dep't of Treasury,* 440 Mich 400; 488 NW2d 182 (1992), cert den — US —; 121 L Ed 2d 567 (1992); *Trinova Corp v Dep't of Treasury,* 433 Mich 141, 149; 445 NW2d 428 (1989), aff'd 498 US

358; 111 S Ct 818; 112 L Ed 2d 884 (1991). If a taxpayer's business activity takes place only partially in Michigan, only a portion of it may constitutionally be taxed in Michigan. *Trinova, supra.* A state may not tax value earned outside its borders. *Id.*

The single business tax is calculated using the taxpayer's tax base. One factor in determining the tax base is the percentage of the taxpayer's total sales made "in this state." MCL 208.51; MSA 7.558(51). Sales of tangible personal property are considered to have been made in this state if the taxpayer is not taxable for them in the purchaser's state. MCL 208.52(b); MSA 7.558(52)(b).

Section 42 of the SBTA provides:

> For purposes of apportionment of the tax base from business activities under this act, a taxpayer is taxable in another state if, (a) in that state he is subject to a business privilege tax, a net income tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business or a corporate stock tax, a tax of the type imposed under this act, or (b) that state has jurisdiction to subject the taxpayer to 1 or more of the taxes regardless of whether, in fact, the state does or does not. [MCL 208.42; MSA 7.558(42).]

Michigan may not tax a sale of tangible personal property if: (1) the state to which the property is shipped taxes the transaction, or (2) the state has jurisdiction to impose any of the taxes listed in § 42.

FEDERAL PUBLIC LAW 86-272 DOES NOT SUPPLY THE
APPROPRIATE STANDARD

Defendant argues initially that federal Public Law 86-272 determines whether target states can

tax plaintiffs for soliciting business. It alleges that PL 86-272 establishes the minimum nexus standard for constitutional due process. That law provides:

Imposition of net income tax

(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1). [15 USC 381.]

Section 381 prevents a state from imposing a net income tax on a foreign taxpayer if the taxpayer's only connection with the state is the solicitation of business there. The legislative history of § 381 reveals that Congress had a rather limited purpose in enacting PL 86-272. See *Heublein, Inc v South Carolina Tax Comm,* 409 US 275, 279; 93 S Ct 483; 34 L Ed 2d 472 (1972). The enactment occurred as a result of the United States Supreme Court's decision in *Northwestern States Portland Cement Co v Minnesota,* 358 US 450; 79 S Ct 357; 3 L Ed 2d 421 (1959). *Northwestern* held that a foreign

corporation's net income from interstate operations may be subjected to state taxation so long as it has an adequate nexus with the taxing state. Congress wrote § 381 to clearly define a lower limit for the exercise of a state's power to impose a net income tax. Clarity to remove uncertainty was its primary goal. *Heublein,* 280. See also *Quill v North Dakota Tax Comm'r,* 504 US —, —, n 9; 112 S Ct 1904, 1915, n 9; 119 L Ed 2d 91, 109, n 9 (1992).

It is apparent from the legislative history of PL 86-272 that the act was limited in scope and was not intended to apply to taxes other than net income taxes. What is less clear is what a net income tax encompasses. Statutorily, it is defined as "any tax imposed on, or measured by, net income." 15 USC 383. No known federal cases have defined "measured by net income." However, whether a tax is a net income tax should not be determined by the state's labeling of the tax. See *Wisconsin Dep't of Revenue v William Wrigley, Jr, Co,* 505 US —; 112 S Ct 2447; 120 L Ed 2d 174 (1992).

In the *Wrigley* case, the United States Supreme Court applied § 381 to Wisconsin's corporate franchise tax. It ruled that Wisconsin cannot impose its franchise tax on foreign corporations whose only activity within the state is the solicitation of business. Wisconsin's franchise tax is measured by a taxpayer's entire Wisconsin net income. Wis Stat 71.23(2). Other states' franchise taxes are not measured by net income, hence are not limited by § 381. See 72 Pa Stat Ann Taxation and Fiscal Affairs, § 7602(b)(1)(Purdon); *Clairol Inc v Commonwealth,* 513 Pa 74; 518 A2d 1165 (1986).

Public Law 86-272 does not prevent a state from levying taxes listed under § 42 of the SBTA which are not imposed on or measured by net income.

Eligible taxes include a franchise tax on the privilege of doing business, a business privilege tax or a corporate stock tax.[1] MCL 208.42; MSA 7.558(42). Therefore, we conclude that § 381 does not provide the minimum nexus standard appropriate for determining whether foreign states' taxation of plaintiffs would violate the due process or the interstate commerce clauses.

### MERE SOLICITATION IS SUFFICIENT TO SUPPORT CONSTITUTIONAL DUE PROCESS NEXUS

Foreign states may not impose taxes on the mere solicitation of business if the taxes violate either the due process or interstate commerce clauses of the federal constitution. US Const, Am XIV; US Const, art I, § 8, cl 3. The United States Supreme Court recently distinguished between application of the two clauses to tax cases. *Quill, supra.* In *Quill,* the Court observed that the due process clause and the commerce clause are closely related but that they differ fundamentally in several respects. *Id.* Each poses distinct limitations on a taxing power of the state and each addresses different constitutional concerns. *Quill, supra.* Although Congress may have plenary power to regulate commerce between the states, it lacks power to authorize a violation of the due process clause.

To satisfy due process, a state tax may be levied only when there exists some definite link, some minimum connection between a state and the person, property or transaction taxed. *Quill,* 504 US —; 119 L Ed 2d 102, citing *Miller Bros Co v*

---

[1] Resolution of whether a single business type tax is "measured by" net income is not necessary for our determination of this case. Therefore, we do not decide whether foreign states can impose a single business type tax on mere solicitation or whether Michigan can impose the single business tax on foreign taxpayers for mere solicitation.

*Maryland,* 347 US 340, 344-345; 74 S Ct 535; 98 L Ed 744 (1954). The due process clause requires, also, that income attributed to a state for tax purposes must be rationally related to "values connected with the taxing State." *Quill,* 504 US —; 119 L Ed 2d 102, citing *Moorman Mfg Co v Bair,* 437 US 267, 273; 98 S Ct 2340; 57 L Ed 2d 197 (1978).

In *Quill,* the state of North Dakota imposed a use tax on property purchased for use or consumption within the state. *Quill, supra.* None of plaintiff's employees worked or lived in North Dakota. Plaintiff sold office equipment and supplies in the state using catalogs, advertisements and telephone calls. In ruling that there was no due process violation, the Supreme Court concluded that

> . . . Quill has purposefully directed its activities at North Dakota residents, that the magnitude of those contacts are more than sufficient for due process purposes, and that the use tax is related to the benefits Quill receives from access to the State. We therefore agree with the North Dakota Supreme Court's conclusion that the Due Process Clause does not bar enforcement of that State's use tax against Quill. [504 US —; 119 L Ed 2d 104.]

*Quill* is important, because it refutes defendant's argument that mere solicitation establishes a due process nexus only for the collection of use taxes, not for the imposition of other taxes. See *Scripto, Inc v Carson,* 362 US 207; 80 S Ct 619; 4 L Ed 2d 660 (1960). In *Scripto,* the United States Supreme Court upheld the use-tax collection duty imposed on Scripto based on mere solicitation. *Id.* Although *Quill* also involved a use tax, from the discussion there, we believe the Court implicitly recognized that the due process nexus standard is the same

for all tax cases. The standard inquires whether the taxpayer had fair warning that its activity may subject it to the jurisdiction of a foreign sovereign. *Shaffer v Heitner,* 433 US 186, 218; 97 S Ct 2569; 53 L Ed 2d 683 (1977). See also *Int'l Shoe Co v Washington,* 326 US 310; 66 S Ct 154; 90 L Ed 95 (1945).

*Quill* held that a foreign corporation which purposefully benefits from the economic market of a state may subject itself to that state's in personam jurisdiction even if not physically present there. The Court did not indicate that the due process nexus standard for use tax collection cases differs from that applicable to other tax cases. See also *Allied Signal, Inc v Director, Division of Taxation,* 504 US —; 112 S Ct 2251; 119 L Ed 2d 533 (1992).

As in *Quill,* plaintiffs in these cases purposefully availed themselves of the benefits of an economic market in the target states. It is undisputed that they solicited sales in target states. Unlike the plaintiff in *Quill,* the plaintiffs here did more than solicit business through the use of the mail and telephone. Moreover, they are not mail order companies. Cf. *Quill, supra; Nat'l Bellas Hess, Inc v Dep't of Revenue of Illinois,* 386 US 753; 87 S Ct 1389; 18 L Ed 2d 505 (1967). In conclusion, plaintiffs' solicitation activities constituted such minimum contacts with the target states that plaintiffs could not successfully maintain a due process challenge to taxation on those activities by the target states.

PLAINTIFFS' SOLICITATION ACTIVITIES MUST ALSO
SATISFY THE COMMERCE CLAUSE NEXUS STANDARD

The conclusion that due process does not prevent target states from taxing plaintiffs does not end our legal inquiry, however. A tax may with-

stand a due process challenge but violate the commerce clause. See *Quill, supra.* Foreign states may not impose taxes on the mere solicitation of business if the taxes violate the interstate commerce clause. US Const, art I, § 8, cl 3.

In contrast to the minimum connection nexus standard necessary to withstand a due process challenge, a higher nexus standard must be met to withstand a commerce clause challenge. Faced with a commerce clause challenge, courts will sustain a tax so long as it: (1) is applied to an activity which has a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to services provided by the taxing state. *Complete Auto Transit, Inc v Brady,* 430 US 274, 285; 97 S Ct 1076; 51 L Ed 2d 326 (1977).

Before addressing the last three prongs of the commerce clause test, we must initially determine whether plaintiffs' activities were sufficient to establish a substantial nexus with the target states. Unlike the minimum connection due process nexus standard, the commerce clause substantial nexus standard limits the reach of state taxing authority to ensure that state taxation does not unduly burden interstate commerce. *Quill, supra.*

In *Quill,* the United States Supreme Court followed a bright line test established twenty-five years earlier to determine whether the tax in question violated the commerce clause. See *Nat'l Bellas Hess, Inc, supra. Bellas Hess* stands for the proposition that a vendor, whose only contacts with the taxing state are by mail or common carrier, lacks the substantial nexus required by the commerce clause. In *Quill,* the Court held that the taxpayer must have some "physical presence" in the target state to establish a substantial nexus with it. *Quill, supra.* The Court recognized that a

substantial nexus may be created by the presence of a small sales force, plant or office of the taxpayer within the state. Since Quill had no physical presence in North Dakota, the Court found that the imposition of the use tax did violate the commerce clause. However, the Court recognized that Congress has the ultimate power to resolve the commerce clause problem and might do so, given that the Court found no due process violation. *Quill, supra.*

As in *Quill,* here the crucial question is whether the mere solicitation of business creates a substantial nexus with target states to withstand a commerce clause challenge to taxation. In case No. 119601, the trial court granted summary disposition to Guardian, finding no genuine issues of material fact. MCR 2.116(C)(10). The ruling was premised on the belief that mere solicitation is sufficient to withstand any constitutional challenge. However, after *Quill,* it is abundantly clear that Guardian must show a physical presence within a target state to establish a substantial nexus to it. Guardian must allege and prove that a target state tax as described in § 42 would not violate the commerce clause. MCL 208.42; MSA 7.558(42). Only then could Guardian successfully challenge application of Michigan's single business tax to its sales in the target state.

A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. The court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence available to it. *Dumas v Auto Club Ins Ass'n,* 168 Mich App 619, 626; 425 NW2d 480 (1988), rev'd on other grounds 437 Mich 521 (1991). In deciding on it, the court must give the benefit of reasonable doubt to the nonmoving party. It determines whether a record might be

developed which would leave open an issue upon which reasonable minds could differ. *Hutchinson v Allegan Co Bd of Road Comm'rs (On Remand),* 192 Mich App 472, 480; 481 NW2d 807 (1992). The moving party has the initial burden of supporting its position by affidavits, depositions, admissions or other documentary evidence. *Ward v Frank's Nursery & Crafts, Inc,* 186 Mich App 120, 134; 463 NW2d 442 (1990). The party opposing the motion then has the burden of showing a genuine issue for trial by affidavits or other documentary evidence. *Hutchinson,* 481.

Guardian asserted in its second amended complaint that its business activity in the target states was limited to the mere solicitation of sales. It called on customers, secured orders from them and expanded its markets in the destination states. Defendant alleged in its answer that it was without sufficient knowledge on the matter. It alleged that some of Guardian's activities exceeded the mere solicitation of business. It assumed as true that Guardian's remaining activities consisted of solicitation only of sales.

Guardian's motion for summary disposition was based solely on defendant's admission that Guardian's activities consisted of the solicitation only of sales. Guardian submitted no affidavits with its motion. In response, defendant alleged that it lacked knowledge of the identity of the target states and of the particular activities conducted by Guardian there. Defendant submitted an untimely affidavit by David Kirvan, the Administrator of the Single Business Tax Division. Kirvan indicated that audit reports did not show in which states Guardian sold its products or the activities Guardian actually conducted in them.

In response to defendant's answer to its motion for summary disposition, Guardian submitted un-

timely affidavits by sales managers Karl Straky and Patrick O'Malley. Straky and O'Malley managed Guardian's sales force and directed its marketing and inventories. They indicated that solicitation generally consists of calling on customers, including potential customers, taking orders and forwarding comments and complaints to the plant located in Michigan.

We conclude that summary disposition was inappropriately granted, because a genuine issue of fact exists regarding the extent of Guardian's solicitation activities within each target state. A target state that taxed Guardian's solicitation activities would be in violation of the commerce clause if Guardian's employees were never present within the state. The record is unclear whether Guardian's employees were present in each target state.

Defendant's admission and Guardian's untimely filed affidavits were not enough to support Guardian's motion for summary disposition. The mere solicitation of sales, standing alone, is insufficient to establish the substantial nexus required to withstand a commerce clause challenge to taxation. Therefore, we reverse the grant of summary disposition and remand, finding that a record might be developed which would leave open an issue upon which reasonable minds might differ.

In case No. 120048, the parties entered into a stipulation that Cargill's activities did not exceed the solicitation of sales as contemplated under PL 86-272. The term "solicitation of orders," which we deem equivalent to the term "solicitation of sales," has recently been defined by the United States Supreme Court. *Wrigley, supra.* Solicitation of orders involves activities entirely ancillary to requests to purchase, activities serving no indepen-

dent business functions apart from their connection to the solicitation of orders. *Wrigley, supra.*

Case No. 120048 was tried by the Court of Claims on its merits. The Court concluded that mere solicitation was insufficient to meet the nexus requirements under PL 86-272. In so doing, it applied an inappropriate nexus standard to determine whether plaintiffs are taxable in target states. The appropriate inquiry is whether the taxation of plaintiffs' activities withstands constitutional due process clause and commerce clause challenges. As previously noted, plaintiffs' solicitation activities constituted such minimum contacts with the target states that plaintiffs cannot successfully maintain a due process clause challenge to taxation. See *Quill, supra.*

The tougher question is whether plaintiffs' activities within target states established the substantial nexus with those states to support taxation in the face of a commerce clause challenge. In this case, plaintiffs stipulated that their activities were limited to the solicitation of sales. As earlier indicated, if mere solicitation of sales is its only activity within other states, the taxpayer cannot successfully challenge application of Michigan's single business tax to its sales in those states. Plaintiffs had the burden of proving that they were taxable in target states. They would not be taxable in target states if the taxation were violative of the commerce clause. We are unable to determine from the record whether plaintiffs had a physical presence in each of the target states or whether their activities there exceeded mere solicitation. Without such activities, target states could not tax plaintiffs. Therefore, we conclude that plaintiffs have failed to meet their burden. We affirm the Court of Claims' judgment for defendant on this issue.

THE PROCEDURAL ERRORS ISSUE HAS BEEN RENDERED
MOOT

In case No. 119601, Treasury argues that procedural errors occurred in the Court of Claims which mandate reversal. Due to our holding that summary disposition was inappropriately granted, we find the issue has been rendered moot.

THE COMMISSIONER HAD DISCRETION TO IMPOSE A
PROSPECTIVE-ONLY LIMITATION

In case No. 120048, plaintiffs argue that the Commissioner of Revenue had no authority to impose a prospective-only limitation on the filing of consolidated single business tax returns. They assert that the commissioner was without authority to require them to obtain approval before filing combined tax returns. Section 77 of the SBTA provides in part:

The commissioner may require or permit the filing of a consolidated or combined return by an affiliated group of corporations which are Michigan taxpayers. [MCL 208.77; MSA 7.558(77).]

When we seek to determine the intent of the Legislature, we first examine the specific language used. *People v Hawkins,* 181 Mich App 393, 396; 448 NW2d 858 (1989). The Legislature is presumed to have intended the meaning it plainly expressed. *Frasier v Model Coverall Service, Inc,* 182 Mich App 741, 744; 453 NW2d 301 (1990). If the meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Nat'l Exposition Co v Detroit,* 169 Mich App 25, 29; 425 NW2d 497 (1988).

We find the language of § 77 to be clear. The

SBTA gives the Commissioner of Revenue discretion to allow consolidation of tax returns. We will uphold the commissioner's decision not to allow consolidation retroactively, unless there is no rational basis for it. See *Clarke-Gravely Corp v Dep't of Treasury,* 412 Mich 484, 489; 315 NW2d 517 (1982).

In this case, plaintiffs argue that the *Clarke-Gravely* "rational basis" standard should not be applied to decisions of the commissioner made under the SBTA. They assert that the commissioner has more discretion under the income tax act than under the SBTA. We disagree and find that the slight variation in phraseology between the two statutes relied on by plaintiffs is merely a grammatical simplification.

Consolidated filings have been made available under the SBTA to ease taxpayers' administrative expenses, thereby encouraging multi-state corporations to remain or become active in Michigan. *W R Grace & Co v Dep't of Treasury,* 115 Mich App 69, 72; 320 NW2d 62 (1982). Denying retroactive consolidation does not defeat this purpose. Multi-state corporations are expected to assess the relative advantages of a particular filing status in advance of filing. Moreover, unnecessary administrative burdens could be created if corporations were allowed retroactively to consolidate their tax returns.

Therefore, we determine that the Commissioner of Revenue had a rational basis to prevent the retroactive consolidation of plaintiffs' corporate tax returns. The Court of Claims did not err in holding that the commissioner has the inherent discretionary authority to impose a prospective-only limitation to consolidation of returns filed under the SBTA.

THE TAX BENEFIT PAYMENTS WERE A FUNCTION OF
CONTROL AND OWNERSHIP

Treasury argues on cross appeal that the court erred by allowing Cargill Leasing and Cargill to file consolidated tax returns for the tax years 1984-1985. Section 77 of the SBTA permits the commissioner to allow affiliated corporations to file a consolidated return if their intercorporate transactions are of a "substantial" nature. The determination whether the nature of intercorporate transactions is substantial cannot focus on control, ownership or financing arrangements, or any combination of those factors. See MCL 208.77(b); MSA 7.558(77)(b).

The trial court concluded that Cargill's acquisition of federal and state tax benefits and its leasing of tangible personal property from Cargill Leasing were intercorporate transactions of a substantial nature. They did not involve control, ownership or financing arrangements. The court noted that the transactions, lumping together both tax allocation benefits and rental payments, ranged from a low of $12.6 million to $16.5 million for the years in question.

Cargill's tax benefit payments to Cargill Leasing were necessitated by the accounting method selected under federal law to allocate tax liabilities and benefits. Treas Reg § 1.1552-1(a); 26 CFR 1.1552-1(a). The payments to Cargill Leasing were an aspect of Cargill's ownership and control of Cargill Leasing in that they (1) took place only because of the existence of the parent-subsidiary relationship; and (2) Cargill used the relationship to gain a tax advantage by filing consolidated federal returns, thereby preventing Cargill Leasing from using its losses and credits to offset its own taxes in other years. Therefore, we conclude

that the trial court erred. The tax benefit payments to Cargill Leasing directly involved Cargill's ownership and control of Cargill Leasing.

The trial court was correct in concluding that Cargill's rental payments to Cargill Leasing did not involve Cargill's ownership, control or financing arrangement with Cargill Leasing. However, the court did not specifically address whether the payments, standing alone, were of a substantial nature. It did not separate the rental payments from the tax benefit payments. No evidence was introduced establishing the amount of rent Cargill paid to Cargill Leasing for tax years 1984-1985.

The record suggests that the rental payments may have constituted a relatively small portion of the total value of the intercorporate transactions. In 1982, the intercorporate payments from Cargill to Cargill Leasing exceeded $15 million. Apparently, only $100,000 to $110,000 of this amount was for rent. Laurence Neer, the state income tax manager for Cargill, suggested that the intercorporate rental payments would be insufficient, standing alone, to satisfy the requirements of § 77.

Based on the record, we conclude that plaintiffs failed to meet their burden of proving that Cargill's rental payments to Cargill Leasing satisfied the requirements of § 77. Therefore, the Court of Claims erred by allowing consolidation of plaintiffs' tax returns for 1984-1985.

Case No. 120048 is affirmed in part and reversed in part. Case No. 119601 is reversed and remanded. We do not retain jurisdiction.