SCHOLASTIC BOOK CLUBS, INC v DEPARTMENT OF TREASURY

Docket No. 189386. Submitted December 3, 1996, at Detroit. Decided May 20, 1997, at 9:05 A.M. Leave to appeal sought.

Scholastic Book Clubs, Inc., a company based in Missouri, brought an action in the Wayne Circuit Court against the Department of Treasury and others, seeking a declaration that it is under no obligation to collect and remit use taxes on books and other merchandise that the plaintiff sells to Michigan schoolchildren through their teachers. On stipulated facts indicating that the plaintiff mails sales catalogs to the teachers, that the teachers are not obligated to purchase books and materials or to solicit orders from students, that the teachers transmit orders and payments from students to the plaintiff, that ordered merchandise is delivered to the teachers for distribution to the students, that the plaintiff awards bonus points on the basis of the amount of merchandise purchased, and that bonus points are redeemable for books and merchandise for classroom libraries or low-income students, the court, Pamela R. Harwood, J., issued a judgment in favor of the plaintiff. The defendants appealed.

The Court of Appeals *held*:

1. Section 4(b) of the Use Tax Act, MCL 205.94(b); MSA 7.555(4)(b), exempts from taxation property for whose use, storage, or consumption taxation is prohibited by the United States Constitution. The Commerce Clause, US Const, art I, § 8, forbids the burdening of interstate commerce or its essential instrumentalities through taxation. The imposition of use tax, where challenged as a violation of the Commerce Clause, as in this case, will be sustained if the activity taxed has a substantial nexus to the taxing state and the tax is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the taxing state.

2. An out-of-state vendor must have some physical presence in the taxing state to establish a substantial nexus with it. In this case, the plaintiff's use of Michigan teachers to take orders and deliver merchandise does not constitute a substantial nexus to, or physical presence in, Michigan. The teachers are not employees or agents of

the plaintiff, lack authority to bind the plaintiff, and are not under the plaintiff's control.

Affirmed.

1. TAXATION — USE TAX — COMMERCE CLAUSE.

The imposition of use tax, if challenged as a burden on interstate commerce that is prohibited by the Commerce Clause, will be sustained where the activity taxed has a substantial nexus to the taxing state and the tax is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the taxing state (US Const, art I, § 8; MCL 205.94[b]; MSA 7.555[4][b]).

2. TAXATION — USE TAX — COMMERCE CLAUSE — OUT-OF-STATE VENDORS — SUBSTANTIAL NEXUS TO MICHIGAN.

An out-of-state vendor has a substantial nexus to Michigan and is subject to the obligation to collect and remit use taxes on merchandise sold to purchasers in Michigan if the vendor has a physical presence in Michigan (US Const, art I, § 8; MCL 205.94[b]; MSA 7.555[4][b]).

3. TAXATION — USE TAX — COMMERCE CLAUSE — OUT-OF-STATE VENDORS — SUBSTANTIAL NEXUS TO MICHIGAN.

An out-of-state vendor of books and other merchandise to Michigan schoolchildren does not establish a substantial nexus to, or physical presence in, Michigan, and therefore does not incur an obligation to collect and remit use taxes for the merchandise, by using Michigan teachers who are not its employees or agents and are not subject to its control to distribute to, and collect order forms from, the children and to distribute ordered books and merchandise to the children (US Const, art I, § 8; MCL 205.94[b]; MSA 7.555[4][b]).

*Brann & Isaacson* (by *George S. Isaacson* and *David W. Bertoni*) and *Weisman, Trogan, Young & Schloss, P.C.* (by *Anthony V. Trogan*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Kevin T. Smith,* Assistant Attorney General, for the defendants.

Before: MACKENZIE, P.J., and WAHLS and MARKEY, JJ.

MACKENZIE, P.J. Defendants appeal as of right from an order granting plaintiff's motion for summary dis-

position pursuant to MCR 2.116(A) and holding that defendants could not impose use tax collection and remittance obligations on plaintiff. We affirm.

Plaintiff is a Missouri-based company that sells books and other materials to schoolchildren throughout the United States. The parties' statement of stipulated facts establishes that plaintiff mails catalogs to teachers, who are under no obligation to order any merchandise or to obtain orders from students. If a teacher or any of the teacher's students decides to order something, the teacher enters the order for the student and submits it to plaintiff with payment. The books are then delivered to the teacher, who distributes them to the students who have ordered. As a promotional program, plaintiff awards "bonus points" based on the amount of goods purchased. These points may be redeemed for additional books or materials that are typically used to supply classroom libraries or to provide books to low-income families. Plaintiff neither owns nor leases any real property in this state, and it has no employees or independent contractors in this state. Additionally, absent the role that Michigan school teachers play in marketing plaintiff's goods, plaintiff has never availed itself of any state or local services in Michigan.

Plaintiff instituted this declaratory judgment action after defendant Department of Treasury informed plaintiff that it was required to remit use taxes on the books sold to Michigan purchasers. Plaintiff contended that imposition of the use tax was a violation of the Commerce Clause of the United States Constitution, US Const, art I, § 8, because plaintiff did not have a substantial, continuing physical presence in Michigan. The trial court agreed, concluding that

plaintiff's use of teachers to distribute its materials did not provide a sufficient presence for this state to impose use taxes on plaintiff.

Unlike the sales tax, which is a tax imposed upon sellers for the privilege of engaging in the business of making sales of tangible personal property at retail within this state, *World Book, Inc v Dep't of Treasury*, 222 Mich App 203, 205; 564 NW2d 82 (1997), the use tax is an excise tax imposed for the "privilege of using, storing, or consuming tangible personal property in the state." MCL 205.93(1); MSA 7.555(3)(1). The legal incidence of the use tax falls upon the consumer or purchaser who buys personal property outside this state for use in Michigan, but the out-of-state seller is responsible for the collection of the tax. *World Book, supra*, p 206.

Section 4(b) of the Use Tax Act exempts from taxation "[p]roperty, the storage, use, or other consumption of which, this state is prohibited from taxing under the constitution or laws of the United States, or under the constitution of this state." MCL 205.94(b); MSA 7.555(4)(b). To determine whether plaintiff is exempt from collecting the use tax under § 4(b), it must be determined whether imposition of the tax violates the Commerce Clause, which forbids the burdening of interstate commerce or its essential instrumentalities through taxation. *Kellogg Co v Dep't of Treasury*, 204 Mich App 489, 493-494; 516 NW2d 108 (1994). Faced with a Commerce Clause challenge, courts will sustain the imposition of the use tax when four factors, derived from *Complete Auto Transit, Inc v Brady*, 430 US 274; 97 S Ct 1076; 51 L Ed 2d 326 (1977), are satisfied. *Kellogg Co, supra*, pp 493-494; *Guardian Industries Corp v Dep't of Treasury*, 198

Mich App 363, 376; 499 NW2d 349 (1993). The four *Complete Auto* factors are: (1) the activity taxed must have a substantial nexus to the taxing state, (2) the tax must be fairly apportioned, (3) it may not discriminate against interstate commerce, and (4) it must be fairly related to services provided by the taxing state. *Kellogg, supra,* p 495; *Guardian Industries, supra,* p 376.

This case involves the first *Complete Auto* factor, that is, whether plaintiff's activities are sufficient to establish a substantial nexus with Michigan. It is well established that an out-of-state vendor whose only contacts with the taxing state are by mail or common carrier, or whose business activity is limited to the mere solicitation of sales, lacks the substantial nexus required by the Commerce Clause. See *Guardian Industries, supra,* p 376; *Nat'l Bellas Hess, Inc v Dep't of Revenue of Illinois,* 386 US 753, 757; 87 S Ct 1389; 18 L Ed 2d 505 (1967). In *Quill Corp v North Dakota,* 504 US 298; 112 S Ct 1904; 119 L Ed 2d 91 (1992), the Court refused to renounce the *Bellas Hess* "bright-line, physical presence requirement," 504 US 317, and held that an out-of-state vendor must have some "physical presence" in the taxing state to establish a substantial nexus with it. The Court recognized that a substantial nexus may be created by the presence of a small sales force, plant, or office within the state. Because the business in *Quill* had no physical presence in the taxing state, North Dakota, the Court found that that state's imposition of the use tax on goods sold to North Dakota residents violated the Commerce Clause. See *Guardian, supra,* pp 376-377.

In contrast, it is also well established that the presence of salespersons who are employed by an out-of-

state vendor to solicit business in the taxing state, regardless of whether they are residents of the taxing state, constitutes a sufficient nexus with that state. *Guardian Industries, supra,* p 377. In *Scripto, Inc v Carson,* 362 US 207, 212; 80 S Ct 619; 4 L Ed 2d 660 (1960), the Supreme Court extended this concept to include a situation where the out-of-state vendor retained part-time, nonexclusive wholesalers, or "jobbers," to market their products in the taxing state. The plaintiff vendor in *Scripto* hired independent contractors in the taxing state to take orders from customers within the state. These salespersons, who were not exclusively employed by the plaintiff, then received a commission on each sale. The Court found the fact that the workers were not formal full-time employees to be a "fine distinction . . . without constitutional significance." *Id.,* p 211. Rather, the Court stated, "The test is simply the nature and extent of the activities of the [out-of-state vendor]." *Id. Scripto* has been recognized as the furthest extension to date of a state's power to impose use taxes against the limitations of the Commerce Clause. *Bellas Hess, supra,* p 757; *Quill, supra,* p 306.

In this case, the department contends that plaintiff's use of Michigan teachers to take students' book orders and deliver ordered books constitutes a substantial nexus to, or physical presence in, Michigan. Equating Michigan teachers to a sales force representing plaintiff in Michigan, the department argues that the imposition of use tax collection responsibilities on plaintiff does not violate the Commerce Clause under *Quill.* The issue is one of first impression in this state. Other jurisdictions that have considered the question are split with respect to whether a state's

teachers provide the requisite substantial nexus or physical presence to allow the imposition of a use tax collection obligation on out-of-state vendors. We conclude that the use of teachers, without more, does not establish a substantial nexus with, or physical presence in, this state.

The department relies on *Scholastic Book Clubs, Inc v State Bd of Equalization*, 207 Cal App 3d 734; 255 Cal Rptr 77 (1989), a case involving this plaintiff's challenge to the imposition of California's use tax on the materials it sold through California school teachers. Finding that the teachers served the same function as did the independent contractors in *Scripto*, the California court concluded that once the teachers undertook to act with respect to the plaintiff's products, they were acting under the plaintiff's authority. *Id.*, p 737. The court also noted that the plaintiff depended on the teachers "to act as its conduit to the students" and that the bonus point system was similar to the commissions given to the contractors in *Scripto*. *Id.*, p 740. By using the teachers as an intermediary, the plaintiff was "exploiting or enjoying the benefit of California schools and employees to obtain sales," *id.*, and therefore had an obligation to pay use taxes to the State of California. The Kansas Supreme Court recently adopted the *Scholastic Book Clubs* analysis in *In re Appeal of Scholastic Book Clubs, Inc*, 260 Kan 528; 920 P2d 947 (1996).

Plaintiff relies on *Pledger v Troll Book Clubs, Inc*, 316 Ark 195; 871 SW2d 389 (1994). Like plaintiff, Troll, a New Jersey corporation, markets and sells children's books throughout the United States by mailing catalogs to teachers. Its operation is essentially identical to plaintiff's:

> The catalogs instruct the teacher on how to collect student orders, how to consolidate those student orders, and how to collect the money for the orders. After collecting the student orders, the teacher fills out one master order form in his or her name and sends it to Troll. . . .
>
> When the books arrive, the teacher retrieves the student order forms and distributes the books accordingly. Teachers can receive cash or merchandise "bonuses," depending on the size of the order. Troll estimates its total annual sales in Arkansas at 2.7 to 3 million dollars. [*Id.* pp 196-197.]

Unlike the California court, the *Pledger* court found that the State of Arkansas had failed to show the necessary authority and control for an agency relationship to exist between Troll and the teachers. *Id.* In reaching that conclusion, the court rejected the California court's analysis for two reasons. First, it noted that *Scholastic Book Clubs, supra,* was decided before the United States Supreme Court decided *Quill, supra,* and did not take into consideration the bright-line physical presence test for mail-order sales mandated by *Quill. Pledger, supra,* p 392. Second, the Arkansas court determined that, unlike California, Arkansas agency law does not allow agency to be implied retroactively by ratification. *Id.* The court therefore found that Troll did not have the requisite physical presence for the state to validly impose a use tax obligation on it. *Pledger*'s reasoning has been adopted by the Ohio Board of Tax Appeals in *Troll Book Clubs, Inc v Tracy,* No. 92-Z590 (1994 Ohio Tax LEXIS 1374).

In this case, the Michigan teachers who receive plaintiff's catalogs are clearly not its employees. Under Michigan law, they are also not plaintiff's agents. There is no indication that Michigan teachers have the authority to bind plaintiff. Further, plaintiff

has no control over the teachers; the teachers are under no obligation to participate in plaintiff's program. See *Meretta v Peach*, 195 Mich App 695; 491 NW2d 278 (1992). Indeed, teachers are invited to be consumers of plaintiff's materials, just as are their students. We decline to find that plaintiff has a physical presence in this state because, unlike the situation in the California *Scholastic Book Clubs* case, plaintiff's mail contacts with Michigan teachers do not give rise to an agency relationship.

We also agree with the *Pledger* court that the requirement of *Quill, supra,* that an out-of-state vendor have an actual physical presence in the taxing state, is not satisfied by plaintiff's contacts with Michigan teachers. The teachers are not a sales force that works for plaintiff. Rather, they are analogous to parents who order an item from a mail-order catalog for their children; no one would seriously argue that such parents are a "sales force" for mail-order vendors. As stated previously, the teachers are primarily plaintiff's customers and are under no control by, and vested with no authority to act on behalf of, plaintiff.

In the absence of plaintiff's physical presence in Michigan, the substantial nexus with this state necessary to satisfy the Commerce Clause does not exist. Because no such substantial nexus exists, the department may not, under the constitution, impose upon plaintiff the obligation to collect Michigan use taxes on the goods purchased by residents of this state. We therefore affirm the decision of the trial court.

Our disposition of the above issue makes it unnecessary to address defendants' remaining claims.

Affirmed.