Joseph E. MARRAN, Jr., et al.

v.

Harry J. BAIRD et al.

No. 93–437.

Supreme Court of Rhode Island.

Jan. 13, 1994.

Marty C. Marran, Pawtucket, for plaintiffs.

Lisa Dinerman, Sp. Asst. Atty. Gen., Suzanne Worrell Gemma, Office of the Governor, Susan McGuirl, Cerilli, McGuirl & Bicki, Providence, for defendants.

Donald Gill, Robert F. Plante, amici curiae.

## OPINION

LEDERBERG, Justice.

The Superior Court, pursuant to G.L.1956 (1985 Reenactment) § 9–24–27, certified to the Supreme Court the following question of constitutional law:

"Whether R.I. Gen. Laws § 45–9–3 violates Article 13 and/or Article 6, Section 2 of the Rhode Island Constitution."

For reasons set forth in this opinion, we conclude:

1. General Laws 1956 (1991 Reenactment) § 45–9–3, as enacted by P.L.1993, ch. 242, § 1, does not violate article 13 of the Constitution of the State of Rhode Island; and

2. Section 45–9–3 does not violate article 6, section 2, of the Constitution of the State of Rhode Island.

I

*Facts*

On or about July 16, 1993, Moody's Investors Services, a recognized bond-rating agency, downgraded the town of West Warwick's municipal bonds to a grade Ba, a rating below investment grade and equivalent to junk bond status. The town was also in danger of defaulting on bond obligations due in July 1993. As a result, the provisions of § 45–9–3 triggered the formation of a budget and review commission (commission).

Pursuant to § 45–9–3, the General Assembly vests the director of the State Department of Administration (director) with power to appoint such a commission in any city or town where the director finds that a recognized rating agency has assigned the community's bonds a rating below investment grade and that the community faces the imminent threat of default on any or all of its debt obligations. Upon its formation, the nine-member commission, chaired by the director, is required to examine the financial and operating condition of the city or town, to advise the community's officials on developing an adequate budget with budgetary controls, and to issue a report of findings and recommendations no sooner than three weeks after the commission's formation. In addition, the commission must comply with the open-meetings and open-records laws.

After publishing its report the commission can exercise the powers delegated to it under § 45–9–3. Those powers enable the commission to impose taxes, to make appropriations for expenditures, and in order to achieve a balanced budget, to "make such reductions or suspensions in the appropriations * * * as will prevent a deficit for the fiscal year." Section 45–9–3.

On July 29, 1993, in response to the establishment of such a commission in West Warwick, Joseph E. Marran, Jr., Joseph E. Mar-

ran, III, and Marty C. Marran[1] (plaintiffs), filed a verified complaint, seeking to enjoin the activity of the commission. The plaintiffs alleged *inter alia* that § 45–9–3 violates article 13, the home-rule provision, of the Constitution of the State of Rhode Island by unlawfully delegating legislative power to the commission. The plaintiffs also requested that the Superior Court enjoin temporarily the West Warwick financial town meeting reportedly scheduled for August 12, 1993.

On July 30, 1993, the Superior Court denied plaintiffs' motion for a temporary restraining order and plaintiffs' request for a preliminary injunction was assigned for a hearing on August 10, 1993. On that date, the Superior Court certified the foregoing question of constitutional law to this court, which heard oral arguments on November 1, 1993, and issued an order on November 4, 1993, that concluded:

"Section 45–9–3 does not violate [a]rticle 13 * * * [or] [a]rticle 6, [s]ection 2 of the Rhode Island Constitution."

This opinion sets forth our reasoning for that conclusion.

## II

### *Home Rule*

■ Article 13, sections 1 and 2, of the Rhode Island Constitution grants the right of self-government in all local matters to the people of every city or town that has adopted a charter consistent with the Rhode Island Constitution and laws enacted by the General Assembly. *In re Advisory Opinion to the House of Representatives,* 628 A.2d 537, 538 (R.I.1993). The General Assembly has reserved to itself, however, "the power to act in relation to the property, affairs and government of any city or town by general laws which shall apply alike to all cities and towns, but which shall not affect the form of government of any city or town." R.I. Const. art. 13, sec. 4. If the General Assembly does act in relation to a particular city or town, such legislative action must be submitted to the electors of the town. *Id.* In any case, "[n]othing contained in this article 13 shall be deemed to grant to any city or town the power to levy, assess and collect taxes or to borrow money, except as authorized by the general assembly." (Emphasis added.) R.I. Const. art. 13, sec. 5.

■ The Home Rule Amendment altered the traditional rule that cities and towns have "no inherent right to self-government." *In re Advisory Opinion,* 628 A.2d at 538. Once a municipality has adopted a valid home rule charter, it may "enact and amend local laws relating to its property, affairs and government not inconsistent with this Constitution and laws enacted by the general assembly in conformity with the powers reserved to the general assembly." R.I. Const. art. 13, sec. 2; *e.g., O'Neill v. City of East Providence,* 480 A.2d 1375, 1379 (R.I.1984). "Municipalities may not, however, legislate on matters of statewide concern. The power of the General Assembly remains exclusive in those areas." *Westerly Residents for Thoughtful Development, Inc. v. Brancato,* 565 A.2d 1262, 1264 (R.I.1989). Guided by these principles, we now address whether § 45–9–3 violates West Warwick's right to home rule.

■ The plaintiffs assert that § 45–9–3 will affect each municipality "in a different way and to a different degree" and therefore does not apply "alike" to all cities and towns as required by article 13, section 4. They also assert that because § 45–9–3 affects West Warwick in particular, voter approval is required pursuant to article 13, section 4. We disagree.

■ Pursuant to article 13, section 4, the Legislature may enact rules of general application which affect local matters provided such statutes "apply alike to *all cities and towns*" but do "not affect the form of government of any city or town." (Emphasis added.) *See, e.g., Bruckshaw v. Paolino,* 557 A.2d 1221, 1223 (R.I.1989).

Section 45-9-3 empowers the director to appoint a budget and review commission "in any town or city." By its terms, therefore, § 45–9–3 does not apply to a specific town or city. *Cf. McCarthy v. Johnson,* 574 A.2d 1229, 1231 (R.I.1990) (act expressly authorizing suit against city of Newport directly af-

---

1. Donald Gill and Robert F. Plante filed an amicus curiae memorandum of law.

fected only Newport and was not applicable to all cities and towns). Rather, because on its face it is applicable to any city or town, it clearly is an act of general application. *City of East Providence v. Local 850, International Association of Firefighters, AFL–CIO,* 117 R.I. 329, 338–39, 366 A.2d 1151, 1156 (1976).

██ Section 45–9–3's validity therefore hinges upon resolution of two issues: (1) whether it "applies alike" to all municipalities and (2) whether it affects any municipality's form of government.

In *City of Cranston v. Hall,* 116 R.I. 183, 354 A.2d 415 (1976), we concluded that the Fire Fighters' Arbitration Act, which made collective bargaining available to firefighters, applied equally in all municipalities. *Id.,* at 186, 354 A.2d at 417. With respect to that act's applicability, we stated:

> "That fire fighters in some locations may elect not to bargain about a particular item or that collective bargaining agreements may vary from one municipality to another does not make the legislation special rather than general in nature. The critical fact is that the enabling legislation applies equally to all cities and towns." *Id.,* at 186, 354 A.2d at 417.

Application of this principle to § 45–9–3 inescapably leads to the conclusion that § 45–9–3 "applies alike" to all cities and towns for purposes of Rhode Island Constitution article 13, section 4. For example, upon the downgrading of its bonds, each city and town becomes subject to the same process under § 45–9–3. Although the implementation of § 45–9–3 may affect each town or city differently, the statute, on its face, applies equally to "all cities and towns." 116 R.I. at 186, 354 A.2d at 417.

██ The plaintiffs also maintain that by enabling the commission to impose a budget upon the town of West Warwick, § 45–9–3 bypasses West Warwick's financial town meeting and, thus, impermissibly alters the town's form of government. We disagree.

Section 45–9–3 does not expressly alter the structure or form of West Warwick's municipal government. Indeed, any effect it may have on a local government is contained, delineated, and temporary, lasting no longer than the end of the fiscal year.

Under the town's home-rule charter, the mayor is empowered to submit a budget to the town council, *Home Rule Charter, West Warwick, Rhode Island,* art. V, § 502(B) (1988); the council, in turn, submits the budget "to the financial town meeting no later than the first Monday in May." *Id.* at § 502(F). The budget is approved at the financial town meeting on the third Tuesday in May. *See id.* at §§ 502–04. Moreover, the charter requires that "[t]he budget * * * shall be balanced for each fiscal year," and directs the mayor to "prevent the occurrence of a deficit." *Id.* at § 508. Obviously, the appointment of a commission that adopts and maintains a balanced budget for West Warwick has a temporary impact on West Warwick's budgetary process. The commission's role, however, lasts no longer than "the end of the fiscal year." Section 45–9–3. Accordingly, § 45–9–3's effect on the structure of West Warwick's government is at most incidental and temporary. The provision does not, therefore, affect the form of government of any city or town and consequently does not violate article 13.

██ Although we address plaintiffs' home-rule arguments against the constitutionality of § 45–9–3, we disagree with plaintiffs' premise that the act affects matters of "purely local concern."

Three considerations set forth in *Town of East Greenwich v. O'Neil,* 617 A.2d 104 (R.I. 1992), help resolve whether an issue is of local or statewide concern:

> "First, when it appears that uniform regulation throughout the state is necessary or desirable, the matter is likely to be within the state's domain. * * *
>
> Second, whether a particular matter is traditionally within the historical dominion of one entity is a substantial consideration. * * * Third, and most critical, if the action of a municipality has a significant effect upon people outside the home rule town or city, the matter is apt to be deemed one of statewide concern." *Id.* at 111.

The fiscal collapse of a municipality can affect the entire state's financial interests,

see G.L. 1956 (1991 Reenactment) chapter 52.1 of title 45 (insolvency of Central Falls threatens credit, health, and welfare of entire state), necessitating the uniform regulations of § 45–9–3.

The General Assembly has consistently recognized the importance of sound fiscal practices in cities and towns by enacting statutes ensuring financial stability notwithstanding the provisions of home-rule charters. Cities and towns are required, pursuant to G.L.1956 (1991 Reenactment) § 45–12–1, enacted in 1896, G.L.1896, ch. 36, § 20, to pay their financial obligations each year, and if sufficient sums are not appropriated, "it shall nevertheless be added to the annual tax levy." Section 45–12–1. The aggregate indebtedness of a city or town has been historically regulated by statutes of general applicability; for example, § 45–12–2 restricts aggregate indebtedness "for money hired" to no more than 3 percent of the taxable property of the municipality unless the municipality is granted special statutory authority or unless the state director of administration authorizes the town's exceeding the limit. See § 45–12–11. Similarly, § 45–12–22(c), enacted in 1979, P.L.1979, ch. 298, § 2, restricts accumulated general-fund deficits to 2 percent of the municipality's most recent tax levy.

We conclude, therefore, that § 45–9–3 clearly affects a matter of statewide concern because (1) the state has consistently exercised oversight over municipal budgets and debt obligations; (2) the insolvency of even a single city or town sufficiently threatens the credit of those outside a home-rule city or town; and (3) the uniform regulations provided by § 45–9–3 are desirable and necessary to ensure the state's objectives of fiscal stability essential to good government. *Town of East Greenwich v. O'Neil,* 617 A.2d at 111.

### III

#### *Delegation*

■ We now address whether § 45–9–3 delegates legislative power in violation of article 6, section 2, of the Rhode Island Constitution. The plaintiffs argue that § 45–9–3 provides no reasonable guidelines to restrain the authority of the commission and, therefore, unlawfully delegates legislative power to the commission. We disagree.

■ The Rhode Island Constitution forbids unrestricted delegations of legislative power by the General Assembly. *Milardo v. Coastal Resources Management Council of Rhode Island,* 434 A.2d 266, 270 (R.I.1981). This prohibition, known as the nondelegation doctrine, is enunciated in article 6, sections 1 and 2, which provide that the Rhode Island Constitution "shall be the supreme law of the state and that the legislative power thereunder shall be vested in the two houses of the Legislature." *Davis v. Wood,* 427 A.2d 332, 335 (R.I.1981). The dual purposes of the doctrine are the protection of citizens against discriminatory and arbitrary actions of public officials, *id.,* and the assurance that duly authorized, politically accountable officials make fundamental policy decisions. *Bourque v. Dettore,* 589 A.2d 815, 817 (R.I.1991). We have recognized, however, that because the General Assembly must confront modern problems of ever-increasing complexity, strict adherence to the nondelegation doctrine would detrimentally inhibit the Legislature's ability to execute its constitutional duties. *Id.; Milardo,* 434 A.2d at 270. In carrying out its duties, the General Assembly can engage the expertise and assistance of administrative agents to effectuate the beneficial purpose of legislation. *O'Neil,* 617 A.2d at 113; *Davis,* 427 A.2d at 335–36. This court therefore permits "reasonable" delegations of legislative power to administrative bodies and agents. *Bourque,* 589 A.2d at 817.

■ A delegation is reasonable, and thus constitutional, "[a]s long as the Legislature that creates the agency demonstrates standards or principles to confine and guide the agency's power." *Davis,* 427 A.2d at 336. In making this determination, "we must read the act as a whole." *Id.* "[I]t is the conditions of the delegation—the specificity of the functions delegated, the standards accompanying the delegation, and the safeguards against administrative abuse—that we examine in determining the constitutionality of a delegation of power." *Milardo,* 434 A.2d at 271.

In *Davis*, we held that the General Assembly's "directive that activities relating to the management of solid waste be conducted 'in an environmentally sound manner' creat[ed] a sufficiently intelligible standard" to confine and guide the Department of Environmental Management's authority. 427 A.2d at 336. Similarly, in *J.M. Mills, Inc. v. Murphy*, 116 R.I. 54, 63–64, 352 A.2d 661, 666 (1976), the requirement that the director of the Department of Natural Resources act only in the "best public interest" was deemed a sufficient standard to confine and guide the agency's discretion. In *Thompson v. Town of East Greenwich*, 512 A.2d 837, 842 (R.I.1986), we found that the power of local licensing boards was sufficiently restricted by the requirement that they act "reasonably." With these principles in mind, we next determine whether § 45–9–3 delegates legislative power constitutionally. Resolution of this issue necessarily requires us to interpret § 45–9–3.

When interpreting a legislative enactment whose language is clear and unambiguous, the enactment must be applied literally. *Pizza Hut of America, Inc. v. Pastore*, 519 A.2d 592, 593 (R.I.1987). In such circumstances, the words of the statute must be given their plain and ordinary meaning. *Trifari v. Employees' Retirement System of Providence*, 485 A.2d 100, 102 (R.I.1984). An examination of § 45–9–3 reveals that it is clear and unambiguous. Therefore, in determining the constitutionality of § 45–9–3, we must give its words their plain and ordinary meaning.

By its terms § 45–9–3 contains two distinct delegations of legislative power. We conclude that each is constitutional.

The first delegation vests power in "the director of the state department of administration" (director) "to appoint a budget and review commission in any town or city where the director * * * finds that the town or city's bond rating has been assigned by one or more recognized rating agencies. to a rating which is below investment grade and [that] there is an imminent threat of default on any or all of its debt obligations." Section 45–9–3.

Applied literally, § 45–9–3 empowers the director to perform the specific function of appointing a budget and review commission not indiscriminately, but only when a municipality meets the criteria set forth in § 45–9–3: a "bond rating * * * below investment grade and * * * an imminent threat of default on any or all of its debt obligations." These objective standards guard against administrative abuse and sufficiently restrain the director in the exercise of the delegated authority to appoint a commission in a town or city. Furthermore, although the power to form a commission is delegated to the director, the membership of the commission is determined by the statute, thereby further restricting the director's authority. In sum, § 45–9–3, read as a whole, contains standards sufficient to restrict and guide the use of power delegated to the director. *Davis*, 427 A.2d at 336.

The second delegation vests the duly appointed commission, under § 45–9–3, with the authority "to impose taxes and to make appropriations for the expenditures of moneys, for the purpose of adopting a budget and, for the purpose of maintaining a balanced budget * * * [to] make such reductions or suspensions in the appropriations to any or all departments, offices or other agencies of town or city government as will prevent a deficit for the fiscal year."

Read literally, § 45–9–3 clearly delegates two specific functions to the commission: (1) the power to impose taxes and appropriate funds "for the purpose of adopting a budget," and (2) the power to make, reduce, or suspend appropriations to the affected municipality's departments, offices, or agencies "for the purpose of maintaining a balanced budget."

In each instance, the commission is required by the terms of the act to exercise its power to accomplish a particular statutory purpose, that of achieving a balanced budget. Furthermore, § 45–9–3 specifically instructs the commission to "commence its work by examining the financial and operating condition of the city or town," to advise the municipality's officials on the development of sufficient budgetary controls, and to publish its findings and recommendations before exercising its powers. Such directives safeguard

against administrative abuse and provide a sufficient standard to confine and guide the commission's exercise of these powers. In addition, § 45–9–3 discourages administrative abuse by requiring that three public members of the affected community sit on the commission, by limiting the commission's duration to no longer than "the end of the fiscal year," and by requiring that the commission comply with the open-meetings and open-records laws. With these requirements, the delegation of power to the commission in § 45–9–3, read as a whole, is constitutional. *Davis,* 427 A.2d at 336.

In conclusion, we are of the opinion that § 45–9–3 provides uniform regulation in each city or town whose financial instability produces a lowered bond rating and threatens imminent default on debt obligations. As an act of general applicability to all cities and towns whose budgetary problems have statewide impact, § 45–9–3 does not violate article 13 of the Rhode Island Constitution.

Because the delegation of authority to the budget and review commission contains sufficient standards and delineates specific tasks and objectives in accordance with its legislative purpose, § 45–9–3 does not violate article 6, section 2, of the Rhode Island Constitution.

The papers in this case are remanded to the Superior Court for entry of judgment consistent with this opinion.