KOCH FUELS, INC.

v.

R. Gary CLARK, in his Capacity as Tax Administrator for the State of Rhode Island.

No. 93–714–M.P.

Supreme Court of Rhode Island.

May 23, 1996.

Ralph Kinder, Providence, Rick E. Bailey, Wichita, KS, for Plaintiff.

Bernard Lemos, Marcia McGair Ippollito, Providence, for Defendant.

**OPINION**

MURRAY, Justice.

This case came before us on a petition for certiorari filed by Koch Fuels, Inc. (Koch), seeking a review of a judgment entered by the District Court. The District Court judgment sustained a final decision rendered by R. Gary Clark, the Tax Administrator of the State of Rhode Island (tax administrator), imposing a gross-earnings tax on sales of fuel oil by Koch to New England Power; New England Power is the parent company of Narragansett Electric Company (Narragansett). After reviewing the record before us, we affirm the District Court's judgment.

The facts of this case are not in dispute. Koch is a Delaware corporation with headquarters in Wichita, Kansas; it is engaged in the sale and distribution of fuel oil. On several occasions between the years 1982 and 1984, Koch sold fuel oil to New England Power to be used for the generation of electricity at Narragansett's electric generating plant in Providence, Rhode Island. These occasions were the only instances in which Koch had any business contact with any entity in Rhode Island. The fuel oil sold to Narragansett originated in Texas, Pennsylvania, or Massachusetts. All shipments were delivered via common carriers using barges or vessels to bring the oil through Narragansett Bay to the Port of Providence.

The terms of each of the sales contracts were negotiated and agreed upon via telecommunications between Koch's representatives in Texas or in New Jersey and New England Power's representatives in Westborough, Massachusetts. Narragansett received invoices for and paid the purchase price of the fuel oil outside Rhode Island. The terms of each of the sales contracts were f.o.b. Providence, indicating that title, possession, and risk of loss surrounding the fuel-oil shipments passed from Koch to Narragansett at the flange, namely, the point where the vessel's oil outflow pipe interlocks the oil terminal's inflow pipe in Rhode Island.

At all times relevant to the sales made to New England Power, Koch did not have employees in Rhode Island and did not rent, lease, or own real property within Rhode Island. Koch did, however, register to do business in Rhode Island and paid Rhode Island corporate taxes in the years it sold fuel oil to New England Power.

On March 11, 1988, the Rhode Island Division of Taxation (tax division) issued Koch a notice-of-deficiency determination regarding five of the six fuel-oil deliveries made by Koch to Narragansett under the Gross–Earnings Tax Act, G.L.1956 § 44–41–1, as amended by P.L.1983, ch. 2, art. 4, § 1.[1] This deficiency amounted to $311,358.57 including penalties and interest.

On March 14, 1988 Koch made a timely request for an administrative hearing. The matter was heard at a formal administrative hearing on August 26, 1988. The tax administrator on the recommendation of the hearing officer issued a final order on April 7, 1989, affirming the tax assessment against Koch.

On May 8, 1989, Koch paid the tax division the full assessment of $366,604.88, which represents the amount of the contested assessment plus statutory interest accrued thereon. Subsequently, on May 9, 1989, Koch filed a complaint seeking de novo review of the tax division's decision in the District Court pursuant to G.L.1956 § 8–8–24.

The District Court rendered its decision on December 7, 1993, affirming the tax administrator's assessment. In its decision the District Court found that the tax assessment at issue did not violate either the due-process clause of the Fourteenth Amendment or the Commerce Clause of Article I, section 8, clause 3, of the United States Constitution. It also found that Koch was an "importer" within the meaning of the Gross–Earnings Tax Act and was therefore correctly assessed pursuant to that act.

On December 23, 1993, Koch filed a petition for writ of certiorari in this court, seeking review of the District Court's judgment. We granted Koch's petition on September 8, 1994. On certiorari, Koch challenges the

---

1. That statute has since been repealed.

District Court's analysis based on the commerce clause and its determination that Koch was an "importer" within the meaning of the Gross–Earnings Tax Act. We shall therefore confine our consideration in similar fashion to the propriety of the District Court's analysis based on the commerce clause and its interpretation of the Rhode Island Gross–Earnings Tax Act.

■ As an initial matter we shall address whether the gross-earnings tax imposed upon Koch may be considered a "sales or use" tax. We note that the District Court, in its decision rendered on December 7, 1993, characterized the tax at issue as a sales or use tax. Upon review of the relevant statute, we are of the opinion that the District Court did not err in reaching such a result.

Section 44–41–1(a), entitled "Gross Earnings Tax of Petroleum Companies," imposes on petroleum companies "an annual tax rate of one percent (1%) of gross earnings * * * derived * * * from the *sale* of petroleum products in this state." (Emphasis added.) The term "gross earnings" is defined as "those earnings from *sales* of its tangible personal property (inventory sold in the ordinary course of business) where shipments are made to points within the state * * * [but] does not include those earnings from *sales* to out-of-state customers for marketing, distribution or consumption outside this state." (Emphasis added.) Section 44–41–1(b). It is clear that although the tax at issue is defined by the Legislature as a "gross earnings" tax, its application pursuant to the statute imposes a tax upon specific sales transactions in Rhode Island. The tax mandated by the statute therefore has the practical effect of a sales or use tax. *See Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326, 331 (1977) (the United States Supreme Court noted that when confronted with commerce-clause challenges of state taxes, it considered "not the formal language of the tax statute but rather its practical effect"). We are therefore of the opinion that the District Court correctly characterized the tax at issue as a sales or use tax.

■ We shall now turn to Koch's contention that the gross-earnings tax imposed

by the relevant statute violates the commerce clause. The United States Supreme Court articulated a four-part test for determining the validity of a state tax under the commerce clause in *Complete Auto.* In that case, the Court provided that a state tax will pass commerce-clause scrutiny when the "tax [1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State." 430 U.S. at 279, 97 S.Ct. at 1079, 51 L.Ed.2d at 331. In applying this four-pronged test to the instant case, we are not persuaded by Koch's contentions that the gross-earnings tax at issue was violative of the commerce clause.

In regard to the first prong of the test Koch argues that its fuel-oil sales in Rhode Island lacked the substantial nexus required in a commerce-clause analysis. Relying on *Quill Corp. v. North Dakota,* 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), Koch contends that because the gross-earnings tax at issue is a sales or use tax, the first prong of the test is satisfied only if the taxpayer maintained a physical presence in the taxing state. Koch argues that since it does not have a physical presence in Rhode Island, its activities lack a substantial nexus with Rhode Island. Although we do not dispute the applicability of *Quill Corp.* to the instant case, we are not persuaded by Koch's contentions that it did not maintain a physical presence in this state.

In *Quill Corp.* the Court considered the imposition of state use tax upon a mail-order vendor of office supplies under both the due process analysis and the commerce-clause analysis. In regard to the commerce-clause analysis, the Court upheld its holding in *National Bellas Hess, Inc. v. Department of Revenue of Illinois,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), and determined that a state cannot constitutionally impose a sales and use tax upon a seller unless the seller maintained a physical presence in the taxing state. *Quill Corp.,* 504 U.S. at 314, 112 S.Ct. at 1914, 119 L.Ed.2d at 108. In instances wherein a taxpayer did "no more than communicate with customers in the

State by mail or common carrier as part of a general interstate business," the Court stressed that that taxpayer did not have a substantial nexus with the taxing state.

In the instant case we are of the opinion that Koch's activities amounted to more than mere "communication with its customers in the State by mail or common carrier." We first note that Koch shipped approximately 25.6 million gallons of oil into Rhode Island over the course of three years with a total value of approximately $18 million. It retained total control over the shipments of oil throughout delivery. Koch retained title, possession, and risk of loss over the oil up until the point it reached the flange in Providence. Koch was in continuous contact and control with both the common carrier and Narragansett and was in a position to cancel the delivery if contract performance was not met by Narragansett. Although Koch did not own the vessels that carried its fuel oil into Rhode Island, Koch's fuel oil represented the entire and exclusive cargo of the vessel. On the basis of Koch's complete control over the oil shipments, the exclusive nature of the common carrier's contract, the unique nature of the cargo, and the fact that the sales were consummated upon delivery in Rhode Island, we are of the opinion that Koch's activities created in practical effect a physical presence within this state. Given Koch's physical presence in Rhode Island, we agree with the District Court's conclusion that Koch had sufficient contact with the state to satisfy the substantial-nexus requirement of the *Complete Auto* test.

■ Koch next asserts that the gross-earnings tax is unfairly apportioned, thereby violating the second prong of the *Complete Auto* test. The apportionment prong of the analysis serves to "prohibit taxes that pass an unfair share of the tax burden onto interstate commerce." *Quill Corp.*, 504 U.S. at 313, 112 S.Ct. at 1913, 119 L.Ed.2d at 107. In *Goldberg v. Sweet*, 488 U.S. 252, 261, 109 S.Ct. 582, 589, 102 L.Ed.2d 607, 616 (1989), the Court stated that "we determine whether a tax is fairly apportioned by examining whether it is internally and externally consistent." *See also Armco, Inc. v. Hardesty*, 467 U.S. 638, 644, 104 S.Ct. 2620, 2623, 81

L.Ed.2d 540, 555–56 (1984); *Container Corp. of America v. Franchise Tax Board*, 463 U.S. 159, 169–70, 103 S.Ct. 2933, 2942–43, 77 L.Ed.2d 545, 556 (1983).

■ "To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result." *Goldberg*, 488 U.S. at 261, 109 S.Ct. at 589, 102 L.Ed.2d at 617. "[T]he internal consistency test [therefore] focuses on the text of the challenged statute and hypothesizes a situation where other States have passed an identical statute." *Id.* In the instant case the gross-earnings tax applies only to those fuel-oil sales consummated in Rhode Island. We are of the opinion that such a tax is internally consistent, for if every state taxed only those fuel-oil sales consummated in the state, only one state would be able to tax each sale. *See id.* (the tax at issue is internally consistent where only one state would be able to tax those interstate phone calls which are charged to an in-state service address).

■ We next turn to the external-consistency requirement. That requirement asks "whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Goldberg*, 488 U.S. at 262, 109 S.Ct. at 589, 102 L.Ed.2d at 617 (citing *Container Corp.*, 463 U.S. at 169–70, 103 S.Ct. at 2942–43, 77 L.Ed.2d at 555–56). Here Koch argues that the gross-earnings tax is unfairly apportioned because it taxes the entire transaction without taking into account other activities associated with the transaction that occurred outside Rhode Island. We are not persuaded by Koch's contentions and are of the opinion that the gross-earnings tax at issue is externally consistent.

■ In the instant case the gross-earnings tax applies only to those sales that are consummated within Rhode Island. Although Koch maintains that its sales of petroleum oil within this state were a result of numerous negotiations outside Rhode Island, the District Court found that "[such] communications between the parties outside Rhode Island do not amount to an apportionment

problem that violates the Commerce Clause." We agree with the District Court. Although it appears that Koch would have this court apportion the sale on the basis of its contract negotiations outside Rhode Island, such an apportionment would be administratively unwieldy. We note that fair apportionment does not require a state to adopt a tax which would "pose genuine administrative burdens." *American Trucking Associations, Inc. v. Scheiner,* 483 U.S. 266, 296, 107 S.Ct. 2829, 2847, 97 L.Ed.2d 226, 251 (1987). Accordingly, we are not persuaded by Koch's contentions. Because the gross-earnings tax is both externally and internally consistent, we are of the opinion that the gross-earnings tax is fairly apportioned.

We turn next to the third prong of the test, which prohibits a state from imposing a discriminatory tax on interstate commerce. Koch asserts that the gross-earnings tax discriminates against interstate commerce because it imposes a tax on income from interstate transactions only. Koch argues that the gross-earnings tax has a discriminatory effect on out-of-state petroleum companies because even though it taxes their sales coming into Rhode Island, Rhode Island petroleum companies are free to make sales out of state that are not subject to the gross-earnings tax.

We have held that the failure of a party challenging the constitutionality of a taxing statute to present evidence of its discriminatory effect is fatal to the claim of unconstitutionality. *Seibert v. Clark,* 619 A.2d 1108, 1116 (R.I.1993). Here, the District Court found that Koch had failed to demonstrate the discriminatory effect of the gross-earnings tax. The District Court specifically noted that Koch produced no evidence whatsoever to support its discrimination argument. On review of the record we also note the absence of any evidence to show that the gross-earnings tax discriminates against out-of-state petroleum companies in favor of Rhode Island petroleum companies. On this basis we must reject Koch's discriminatory-effect assertions.

We now reach the fourth prong of the test, namely, whether the tax at issue is fairly related to the presence and activities of the taxpayer within the state. Koch argues that the assessment from the gross-earnings tax is not fairly related to the services provided to Koch by Rhode Island. Koch asserts that because it has neither employees nor property within Rhode Island, it does not directly receive benefits related to the tax at issue. Koch further argues that because the fuel oil was shipped into Rhode Island on common carriers which it did not own, any state-financed benefits, such as the creation and the management of navigable waterways, benefited the common carrier only.

 Like the substantial-nexus prong of the *Complete Auto* test, the reasonable-relation prong serves to "limit the reach of State taxing authority so as to ensure that State taxation does not unduly burden interstate commerce." *Quill Corp.,* 504 U.S. at 313, 112 S.Ct. at 1913, 119 L.Ed.2d at 107. This prong imposes the "additional limitation that the *measure* of the tax must be reasonably related to the extent of the contact, since it is the activities or presence of the taxpayer in the State that may properly be made to bear a 'just share of state tax burden.'" *Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 626, 101 S.Ct. 2946, 2958, 69 L.Ed.2d 884, 900 (1981). Moreover, "[t]he tax which may be imposed on a particular interstate transaction need not be limited to the cost of the services incurred by the State on account of that particular activity. * * * On the contrary, 'interstate commerce may be required to contribute to the cost of providing *all* governmental services, including those services from which it arguably receives no direct "benefit."'" *Goldberg,* 488 U.S. at 267, 109 S.Ct. at 592, 102 L.Ed.2d at 620–21.

In the instant case Koch's assertions that it is not the beneficiary of services provided by Rhode Island is untenable. We are persuaded by the District Court's findings that the tax imposed on Koch is reasonably related to the services provided by Rhode Island. As the District Court correctly indicated, Rhode Island provided shipping facilities to Koch and maintained emergency equipment in case of an environmental disaster. The risk of an environmental disaster, and its attendant costs, are based upon the amount

of oil imported into and sold in Rhode Island. We note that Koch had shipped approximately 25.6 million gallons of fuel oil into Rhode Island over the course of three years. Given the frequency of Koch's sales in Rhode Island and the amount of fuel oil shipped into Rhode Island, Koch's claim that it did not benefit from the services provided by Rhode Island is without merit. Accordingly we believe that the District Court correctly concluded that the gross-earnings tax is fairly related to the services received by Koch.

In light of the foregoing, we are of the opinion that the tax imposed by the Gross–Earnings Tax Act is consistent with the commerce clause. The tax at issue is applied to an activity with a substantial nexus with Rhode Island, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to services which Rhode Island provides to Koch. We therefore reject Koch's contentions that the District Court erred in its analysis under the commerce clause.

Koch also asserts that the District Court erred in determining that it was an "importer" under the language of the Gross–Earnings Tax Act. Koch argues that an importer is the person to whom the goods are sent. Since the goods in the instant case were sent to Narragansett, Koch argues, Narragansett was the importer of fuel oil into Rhode Island. We are not persuaded by Koch's contentions.

It is well-settled doctrine that when a statute is clear and free from ambiguity, it is the obligation of this court to give effect to its clearly expressed intent. *Gilbane Co. v. Poulas,* 576 A.2d 1195, 1196 (R.I.1990). In such circumstances we must accord the words of the statute their literal and plain meaning. *Marran v. Baird,* 635 A.2d 1174, 1180 (R.I.1994); *City of Warwick v. Aptt,* 497 A.2d 721, 724 (R.I.1985).

The language of § 44–41–1 is clear and unequivocal. It unambiguously states that a "petroleum company" means "every corporation formed for or engaged in the business of importing or causing to be imported by a person other than a [petroleum] corporation subject to tax under this section into this state for sale in this state, extracting, producing, refining, manufacturing or compounding petroleum." Pursuant to the tax administrator's regulations under the Gross–Earnings Tax Act, "an entity is engaged in the business of importing petroleum in Rhode Island if it owns petroleum located outside Rhode Island and ships it or causes it to be shipped to a point within Rhode Island for sale in Rhode Island." *Emergency Rules, Re: Gross Earnings Tax of Petroleum Companies,* Rule II (Oct. 18, 1992). The plain meaning of the term "importer" is a "[p]erson who brings (i.e., imports) goods into [a] country from [a] foreign country." Black's Law Dictionary, 755 (6th ed.1990). Clearly under this definition Koch is the party bringing the product from another state into Rhode Island.

As the District Court correctly indicated, Koch caused the oil to be imported into Rhode Island. Through its own actions Koch conducted the negotiations which resulted in the fuel-oil sales' consummation in Rhode Island. Additionally, because Koch held title, risk of loss, and possession of the fuel oil up until the time the fuel oil passed the flange in Providence, it clearly possessed the fuel oil at the time it was "brought" into the state. Accordingly, we believe that the District Court correctly determined that Koch was an importer within the meaning of the Gross–Earnings Tax Act. We therefore reject Koch's contentions that Narragansett was the importer in the instant case.

For the reasons stated herein, the petition for certiorari is denied and the writ heretofore issued is quashed. The judgment of the District Court is affirmed, and the papers of the case may be remanded to the District Court with our decision endorsed thereon.

FLANDERS, J., did not participate.