MAGNETEK CONTROLS, INC v REVENUE DIVISION, DEPARTMENT
OF TREASURY

Docket No. 181612. Submitted October 2, 1996, at Lansing. Decided February 7, 1997, at 9:15 A.M.

Magnetek Controls, Inc., brought an action in the Court of Claims against the Revenue Division of the Michigan Department of Treasury, seeking recovery of a portion of single business tax assessments that it had paid under protest. The plaintiff, which has its offices and factory in Michigan, sells some of its products in other states through independent sales representatives who are paid on a commission basis. The plaintiff's general sales manager and product-line sales managers travel regularly to other states to meet with the independent sales representatives for the purpose of getting feedback, improving sales, updating information, and assisting in making calls on customers. These managers also attend out-of-state trade shows to cultivate new customers and to answer questions that customers may have. The plaintiff argued that these activities constituted sufficient activities in several other states in prior years to make it subject to taxation in those other states in those years and thereby make it not liable under the Michigan Single Business Tax Act for that portion of those taxes that was based on its sales in those states in those years. The defendant argued that the activities of the plaintiff's managers and independent sales representatives in those states were insufficient to be considered to be contacts with those other states sufficient to overcome the constitutional limitation of the Commerce Clause of the United States Constitution, US Const, art 1, § 8, with respect to the power of those states to tax the plaintiff. The court, Michael G. Harrison, J., found that plaintiff's managers had expended at least ten business days of solid work annually in Indiana, Illinois, and Ohio in 1990 and 1991 and in Pennsylvania in 1990, that the Commerce Clause did not prevent those states in those years from imposing a tax on the plaintiff, and, accordingly, that, pursuant to MCL 208.42, 208.52(b); MSA 7.558(42), 7.558(52)(b), sales made by the plaintiff in those states in those years could not be attributed to Michigan for the purpose of computing the plaintiff's Michigan single business tax liability. The court ordered that the defendant refund those taxes paid by the plaintiff under protest that were attribut-

able to sales in those states in those years. The defendant appealed.

The Court of Appeals *held*:

1. A Michigan taxpayer's sales in other states does not subject the taxpayer to Michigan single business tax liability if the state in which the sale was made has jurisdiction to subject the taxpayer to taxation, regardless of whether the other state, in fact, imposes a tax. Accordingly, the plaintiff's Michigan single business tax liability in the subject years turned on, in part, whether its sales in the other states had rendered it subject to taxation by those states, which, in turn, turned on whether the Commerce Clause barred those other states from taxing the plaintiff as a result of those sales.

2. The Commerce Clause will not bar state taxation of an activity where the tax is applied to an activity that has a substantial nexus with the taxing state. Therefore, given the absence of any facilities owned by the plaintiff in those states and the absence of any employees of the plaintiff being continuously located in those states, the question whether there was a substantial nexus by the plaintiff with those states turned on whether the activities of the managers and the independent sales representatives created such a relationship.

3. While there must be a physical presence in the taxing state, that physical presence need not be substantial, but rather need only be more than a slightest presence. That presence may be manifested by the presence in the taxing state of economic activities performed by a vendor's personnel or on its behalf.

4. The Court of Claims properly found that the activities of the plaintiff's managers and its independent sales representatives constituted a sufficient physical presence in the designated states in the designated years to make the plaintiff susceptible to taxation by those states in those years and that, accordingly, the plaintiff's Michigan single business tax liability should not be based on the sales made by the plaintiff in those states in those years.

Affirmed.

1. TAXATION — SINGLE BUSINESS TAX — SALE OF GOODS — SALES IN FOREIGN STATES.

Sales made by a Michigan taxpayer to customers in other states may not be included in the sales component of the Michigan single business tax where those sales subject the taxpayer to the jurisdiction of the other state to impose taxes, regardless of whether the other state exercises that jurisdiction to impose a tax (MCL 208.42, 208.52[b]; MSA 7.558[42], 7.558[52][b]).

2. TAXATION — CONSTITUTIONAL LAW — COMMERCE CLAUSE — SUBSTANTIAL
    NEXUS — SALE OF GOODS — PHYSICAL PRESENCE.

>  A state's imposition of a tax will be sustained against a challenge that
>  it is barred by the Commerce Clause as long as the tax is applied to
>  an activity with a substantial nexus with the taxing state; the find-
>  ing of a substantial nexus between a taxing state and the vendor of
>  goods sold in the taxing state requires that the vendor have a physi-
>  cal presence in the taxing state; the physical presence need not be
>  substantial, but it must be demonstrably more than a slightest pres-
>  ence and may be manifested by the conducting of economic activi-
>  ties in the taxing state by the vendor's personnel or on the vendor's
>  behalf (US Const, art 1, § 8).

*Howard & Howard Attorneys, P.C.* (by *Patrick R. Van Tiflin, Michele L. Halloran,* and *Kim D. Crooks*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Terry P. Gomoll,* Assistant Attorney General, for the defendant.

Before: McDONALD, P.J., and BANDSTRA and C. L. BOSMAN*, JJ.

BANDSTRA, J. Defendant, Michigan Department of Treasury, assessed single business tax liability to plaintiff, Magnetek Controls, Inc., resulting from sales made in a number of other states for a number of tax years. Plaintiff paid taxes pursuant to those assessments under protest and brought this action seeking to recover a portion of the taxes paid. Defendant appeals as of right a Court of Claims judgment in favor of plaintiff, which followed a two-day bench trial. We affirm.

Plaintiff's offices and factory are located in Michigan. Plaintiff manufactures four separate industrial product lines and has a product-line sales manager

---

* Circuit judge, sitting on the Court of Appeals by assignment.

for each one. A general sales manager supervises the four product-line sales managers. Sales are also made through independent sales representatives who are paid a commission based on sales and who work in various target states other than Michigan promoting plaintiff's products. The independent sales representatives do not exclusively sell plaintiff's products, but rather also sell other lines from other manufacturers.

The general sales manager and the product-line sales managers regularly travel to other states for several reasons: to meet with the independent sales representatives to give them feedback and suggestions, especially to improve sales; to conduct seminars for groups of potential customers assembled by the independent sales representatives; to update the independent sales representatives concerning current information and new applications regarding plaintiff's products, as well as sales and marketing techniques plaintiff has found effective; and to accompany the representatives on calls to specific customers, often giving the sales presentation to the potential customer themselves. Plaintiff sells very technical products that are often adapted to the specific needs of a particular customer, and Michigan-based managers often travel to other states to help close sales by making customers more comfortable regarding the technical aspects of the products.

Other trips outside Michigan are made to attend trade shows. Plaintiff's trade show activity is not directed to any one state, but rather is directed to a specific niche market or target industry in the states surrounding the state in which a trade show is being conducted. One or more product-line sales managers attend these trade shows, often accompanied by

other employees of plaintiff. Plaintiff's employees attend trade shows to cultivate new customers, answer potential customers' questions, and assess plaintiff's competition. While in a state for a trade show, the general sales manager or the product-line sales managers also call upon customers located in that state.

Plaintiff did not keep exact records for the tax years at issue of when the product-line sales managers or the general sales manager went to other states or of exactly what they did and with whom they met. Although expense records only showed that these employees spent approximately ten to fifteen percent of their time in other states, the general manager testified that, in reality, they spent approximately thirty to forty percent of their time away from Michigan.

The nature and level of plaintiff's activity in the other states in which it makes sales is important to its Michigan single business tax liability because sales made to customers in states where plaintiff "is not taxable" are considered to be Michigan sales for the purpose of that tax. MCL 208.52(b); MSA 7.558(52)(b). To avoid tax liability for sales, it is not necessary that plaintiff be actually taxed for sales made to customers in another state; the statute considers plaintiff to be taxable in another state if "that state has jurisdiction to subject the taxpayer to . . . taxes regardless of whether, in fact, the state does or does not." MCL 208.42; MSA 7.558(42). Defendant assessed single business tax liability to plaintiff resulting from sales made to customers in a number of states for a number of tax years, and plaintiff paid taxes pursuant to those assessments under protest. In this Court of Claims action, plaintiff sought recovery of a portion

of the tax paid, arguing that sales to customers in the various states for the various tax years could have been subject to taxation by those states. Defendant argued that the states in which the sales were made could not subject plaintiff to taxation because of the limitation imposed by the Commerce Clause of the United States Constitution. US Const, art I, § 8. As will be explained more fully below, the Commerce Clause question hinges on the level of plaintiff's activity in the states in which sales were made.

After hearing the evidence at trial, the Court of Claims expressed some frustration and criticism regarding plaintiff's record-keeping of its activity in various states. Nonetheless, the court concluded that in Indiana, Illinois, and Ohio during tax years 1990 and 1991 and in Pennsylvania during 1990, plaintiff's general manager and product-line sales managers had expended at least ten business days or two weeks of "solid effort" annually.[1]

With respect to these tax years, the court determined that the Commerce Clause would not prevent the imposition of taxes on plaintiff by these states. Accordingly, under MCL 208.42; MSA 7.558(42) and MCL 208.52(b); MSA 7.558(52)(b), the trial court concluded that sales made to customers in these states during these tax years could not be attributed to Michigan for single business tax purposes.[2] Defendant appealed, arguing that the Court of Claims erred in its

---

[1] Defendant does not contest this factual finding, although, as will be discussed, defendant argues that the amount of effort expended by plaintiff in each state is insufficient to constitute a "substantial nexus" under a Commerce Clause analysis.

[2] With respect to other states and tax years, the Court of Claims ruled against plaintiff concerning these same issues and disallowed any refund. Plaintiff has not appealed these adverse determinations.

analysis of the Commerce Clause question. We disagree.

The United States Supreme Court recently analyzed the Commerce Clause question at issue here in *Quill Corp v North Dakota*, 504 US 298; 112 S Ct 1904; 119 L Ed 2d 91 (1992). Quill was a national merchandiser of office equipment and supplies. *Id.* at 302. It solicited business in North Dakota and elsewhere through catalogues and flyers, advertisements in national periodicals, and telephone calls. *Id.* It delivered all of its merchandise to its North Dakota customers by mail or common carrier from out-of-state locations. *Id.* North Dakota imposed an obligation on Quill to collect and administer a use tax for property purchased by North Dakota purchasers from Quill. *Id.* at 302-303. Quill argued that North Dakota did not have the power to compel it to collect the use tax under the Commerce Clause of the United States Constitution.[3] *Id.* at 303-304.

The Supreme Court reiterated its holding in *Complete Auto Transit, Inc v Bradley*, 430 US 274, 279; 97 S Ct 1076; 51 L Ed 2d 326 (1977): "[W]e will sustain a tax against a Commerce Clause challenge so long as the 'tax . . . is applied to an activity with a substantial nexus with the taxing State . . . .'" *Quill, supra* at 311.[4] The Court answered the "substantial nexus"

---

[3] Although the present case involves the imposition of a tax rather than the imposition of responsibility to administer a tax, the Commerce Clause analysis applies to either question. *Quill, supra* at 319 (Scalia, J., concurring in part and concurring in the judgment), citing *Nat'l Geographic Society v California Bd of Equalization*, 430 US 551, 558; 97 S Ct 1386; 51 L Ed 2d 631 (1977); *Scripto, Inc v Carson*, 362 US 207, 211; 80 S Ct 619; 4 L Ed 2d 660 (1960).

[4] This is one part of a four-part test; the other requirements are not at issue in this appeal. See *Quill, supra* at 311.

question by reiterating the "bright-line exemption from state taxation created in [*Nat'l*] *Bellas Hess*, [*Inc v Dep't of Revenue of Illinois*, 386 US 753; 87 S Ct 1389; 18 L Ed 2d 505 (1967)]," *Quill, supra* at 316, i.e., "a vendor whose only contacts with the taxing State are by mail or common carrier lacks the 'substantial nexus' required by the Commerce Clause." *Id.* at 311. Because Quill fell within this bright-line exemption, the Court reversed the ruling of the North Dakota Supreme Court that had allowed the state to impose tax collection responsibilities on Quill. *Id.* at 319.

*Quill's* "bright-line" establishes a "safe harbor" for certain taxpayers, "the demarcation of a discrete realm of commercial activity that is free from interstate taxation." *Id.* at 315. This does not mean, however, that any sort of commercial activity on the other side of the bright line, or outside the safe harbor, is necessarily subject to tax liability under the Commerce Clause.[5] Thus, for example, the Supreme Court found that Quill was not subject to North Dakota tax obligations under the Commerce Clause even though, "[i]n addition to its common-carrier contacts with the State, Quill also licensed software to some of its North Dakota clients." *Id.* at 315, n 8. The Court affirmed its rejection, in *Nat'l Geographic Society v California Bd of Equalization*, 430 US 551, 556; 97 S Ct 1386; 51 L Ed 2d 631 (1977), of a " 'slightest presence' standard of constitutional nexus." *Quill, supra* at 315, n 8. Because a "slightest presence" is insuffi-

---

[5] In other words, the "bright-line" of *Quill* does not cut as cleanly on both sides. It definitively answers the question who cannot be taxed (vendors whose only contact with a state is through mail order or common carrier) but leaves somewhat open the question who may be taxed (some category of taxpayers with activity in a state beyond merely mail or common carrier contacts).

cient to satisfy the "substantial nexus" requirement of Commerce Clause analysis, *Quill* leaves us with "the vagaries" of determining how much "physical presence" is sufficient. *Id.* at 331 (White, J., concurring in part and dissenting in part).[6]

While clearly stating that a "slightest presence" is insufficient, the Court also stated that "the presence in the taxing State of a small sales force, plant, or office" would suffice to satisfy the "substantial nexus" requirement. *Id.* at 315. In the present case, plaintiff did not have a plant, office, or other property in the states for which tax relief was granted. The dispositive question becomes whether plaintiff's employees by virtue of the annual two weeks of solid sales effort, along with the activity of independent sales representatives permanently located in the states and selling plaintiff's lines along with those of other companies,[7] qualify as the kind of "small sales force" that the Supreme Court suggested would suffice. Defendant argues that anything short of a sales staff of plaintiff's employees permanently located in a state and continuously soliciting sales is insufficient.

Our Court has previously considered the application of *Quill* in *Guardian Industries Corp v Dep't of*

---

[6] Justice White concluded "it is a sure bet" that these vagaries "will be tested to their fullest in our courts," *id.* at 331 (White, J., concurring in part and dissenting in part), while Justice Scalia thought that *Quill* would not "lead to a flurry of litigation over the meaning of 'physical presence,' " *id.* at 321 (Scalia, J., concurring in part and concurring in the judgment). This litigation and related litigation in other states since *Quill* was decided, as will be discussed, suggests that Justice White may have been correct.

[7] Although plaintiff does not place primary reliance on the independent sales representatives' activities to establish substantial nexus, we find their efforts on behalf of plaintiff to be relevant to the analysis under *Quill*.

*Treasury*, 198 Mich App 363; 499 NW2d 349 (1993), and *Gillette Co v Dep't of Treasury*, 198 Mich App 303; 497 NW2d 595 (1993), but neither precedent is helpful for the question at issue here. In *Gillette, supra* at 314, the Court found that the physical presence requirement was satisfied where a taxpayer had a level of activity far in excess of that at issue here, the employment of at least eighteen full-time sales representatives soliciting orders from customers in the target state as well as an ownership interest in various properties there. *Guardian* was a consolidated appeal involving two cases. In the first, this Court reversed an order of summary disposition granted for the taxpayer because the record was unclear whether the taxpayer's employees were "present in each target state." *Guardian, supra* at 379. Similarly, in the second case, the Court determined that the taxpayers had failed to meet the burden of showing that the "substantial nexus" requirement was satisfied because the record did not establish that they had a physical presence in each of the target states. *Id.* at 380. In contrast to *Gillette*, the present case does not involve a full-time sales staff at work in the target states; in contrast to *Guardian*, there is no argument here that plaintiff did not have the level of physical presence determined by the trial court in the target states for each of the tax years for which relief was granted, i.e., at least two weeks' worth of solid sales effort by plaintiff's employees and a continuous presence of independent sales persons representing plaintiff's lines among those of other companies.[8]

---

[8] *Guardian* also stated that "[t]he mere solicitation of sales, standing alone is insufficient to establish the substantial nexus required to withstand a commerce clause challenge to taxation." *Guardian, supra* at 379.

Of the many precedents cited by both parties from other jurisdictions applying *Quill*, we find *In re Orvis Co, Inc v Tax Appeals Tribunal of the State of New York*, 86 NY2d 165; 654 NE2d 954 (1995), most instructive. After a complete review of *Quill* in the context of *Bellas Hess* and other Supreme Court precedents, the court in *Orvis* rejected the taxpayer's claim that *Quill* increased the in-state physical presence requirement of the substantial nexus analysis to require " '*substantial amounts* of in-State people or property.' " *Id.* at 176. The court in *Orvis* noted that neither *Bellas Hess*, *Quill*, or surrounding Supreme Court cases expressed "any insistence that the physical presence of the interstate vendor be substantial . . . ." *Id.* Further, requiring that physical presence be substantial would "destroy the bright-line rule the Supreme Court in *Quill* thought it was preserving"; it would require a "weighing of factors such as number of local visits, size of local sales offices, intensity of direct solicitations, etc." to determine whether there was "substantial" physical presence in the target state. *Id.* at 177. Finally, the court in *Orvis*, *supra* at 178, noted that in a recent case, *Oklahoma Tax Comm v Jefferson Lines, Inc*, 514 US ____; 115 S Ct

---

However, we consider this to be dictum because, as we noted earlier, the reason for the Court's holdings was that the record did not establish that the taxpayers had any physical presence in the target states. Further, we note that the Court in *Guardian* was working with a very limited definition of "solicitation." *Id.* at 379-380. We do not conclude that the Court in *Guardian* meant to hold that any kind of sales activity in a state, standing alone, is insufficient to establish substantial nexus. That understanding of *Guardian* would conflict with the Supreme Court's intimation that the existence of a "small sales force," presumably only engaged in sales activity, would suffice. See *Quill*, *supra* at 315. We conclude, notwithstanding the "mere solicitation" language of *Guardian*, that sales activity standing alone can suffice to establish a substantial nexus, depending on the level of physical presence involved.

1331; 131 L Ed 2d 261 (1995), the Supreme Court "did *not* apply a substantial physical presence test, but instead strictly utilized the substantial nexus prong of the *Complete Auto* test without even passing reference to the substantiality of the physical presence of the vendor . . . in the taxing State.".

On the basis of this survey of relevant precedents, the court in *Orvis, supra* at 178, determined that *Quill* required the following test:

> While a physical presence . . . is required, it need not be substantial. Rather, it must be demonstrably more than a "slightest presence." . . . And it may be manifested by the presence in the taxing State of . . . property or the conduct of economic activities in the taxing State performed by the vendor's personnel or on its behalf.

Applying this standard to the cases before it, the court in *Orvis* determined that a Vermont wholesaler whose salespeople came into New York to visit nineteen customers an average of four times a year had sufficient physical presence in New York to be susceptible to the imposition of tax obligations by the state of New York. *Id.* at 180. The same was true for a second taxpayer before the court, a mail-order computer equipment supplier that had sent troubleshooting consultants into New York on forty-one occasions during the three-year audit period at issue. *Id.* at 180-181.

On the basis of our review of *Quill* and surrounding precedents, we conclude that the court in *Orvis* correctly understood *Quill* and enunciated an appropriate test for applying *Quill*. Accordingly, just as *Orvis* rejected the taxpayers' argument that substantial nexus requires "substantial amounts of in-State

people or property," *id.* at 176, we reject defendant's argument that an in-state sales force continuously soliciting customers is needed. Instead, tax obligations may be imposed, consistent with the Commerce Clause, on taxpayers with "demonstrably more than a 'slightest presence'" in a state, and this requirement can be satisfied by "the conduct of economic activities in the taxing State performed by the vendor's personnel or on its behalf." *Id.* at 178.

Consistent with the holding in *Orvis*, we further conclude that this test is satisfied in the present case, the facts at issue here being similar to those in *Orvis*. Plaintiff demonstrated to the trial court that it had more than a "slightest presence" in the states for which tax relief was granted. As the trial court concluded, economic activities were performed there by plaintiff's personnel (the general sales manager's and product-line sales managers' visits), as well as by persons not employed by plaintiff but acting on its behalf in those states (the independent sales representatives).

In sum, the Court of Claims properly determined that with respect to the tax years and states for which relief was granted to plaintiff, plaintiff had proved sufficient physical presence to make it susceptible to the imposition of a tax obligation by those states, notwithstanding Commerce Clause restrictions. Accordingly, the Court of Claims properly concluded that, under the provisions of MCL 208.42; MSA 7.558(42) and MCL 208.52(b); MSA 7.558(52)(b), sales made by plaintiff to taxpayers in those states during those tax years could not be attributed to Michigan for purposes of single business tax liability. The Court of Claims appropriately concluded that a refund was

owed to plaintiff, in an amount stipulated by the parties.

We affirm.